Coy *v.* Utica and Schenectady Rail Road Co.

———————•-o-•———————

## COY *vs.* THE UTICA AND SCHENECTADY RAIL ROAD COMPANY.

Where the charter of a rail road company required them to purchase a turnpike road running parallel to the proposed rail road, and to assume the liabilities of the turnpike corporation, and gave them the right to lay their rail road track across and along the bed of the turnpike, but required them to restore the road to its former state, or in a sufficient manner not to impair its usefulness; in pursuance of which charter the rail road company purchased the

turnpike road, and laid out and constructed their rail road upon a line designated and located in accordance with such charter, the same being in some places, in close proximity with the turnpike ; and the plaintiff, while traveling upon the turnpike, with a horse driven before a wagon, was passed by a train of cars moving on the track of the rail road, at a place where the two roads were very near each other, and the horse, at the sight and noise of the cars, became frightened, and ran off the turnpike, upon certain obstructions placed there by the rail road company in constructing its road, and the plaintiff was overturned and greatly injured ; *Held,* in an action to recover damages for the injury,

1.  That the plaintiff could not recover on the ground of an encroachment by the rail road, upon the turnpike way, and the negligence of the defendants in omitting to restore the latter to its original width, without proof of an encroachment in fact.

2.  That to entitle the plaintiff to a verdict on the ground of the defendants' negligence, she must show that the negligence complained of was the proximate cause of the injury ; and that in the absence of such proof, the defendants' liability was a question of law.  And hence, that no recovery could be had because of the defendants having excavated earth, on the side of their track, in constructing the rail road, and left there exposed large stones, without erecting any protecting fence between the same and the turnpike.

3.  That the defendants having the legal right to construct their rail road track upon its present location, they were not required to abandon that location, or any part of it, by reason of its contiguity to the turnpike ; nor were they bound to erect fences, screens or guards between the two roads ; neither the rail road charter nor the turnpike charter imposing any such duty, and no such obligation existing at common law.

4.  That the fact that both roads were owned by the same corporation added nothing to its obligations or responsibilities ; its duties to the public being precisely the same as they would have been were the two roads owned by separate corporations.

5.  That in the use and management of the rail road, contiguous to the turnpike, the same responsibilities attached to the defendants that they would assume if the turnpike were a common highway.

Rail road companies, in the use and management of their roads, are bound only to exercise ordinary care ; and the omission to erect fences, screens or guards between a rail road and a highway contiguous thereto cannot be considered a want of such care.

THIS action was tried at the Montgomery circuit, and judgment entered for the plaintiff, from which the defendants appealed.   The complaint averred that the defendants, in 1849, were the owners of the Utica and Schenectady Rail Road, and of the Mohawk Turnpike, which lay side by side ; that the de-

Coy *v.* Utica and Schenectady Rail Road Co.

fendants, in constructing their rail road at a place designated, encroached upon the turnpike, greatly impaired its usefulness to the public and rendered it dangerous to travel with horses and carriages "by taking and using a part of said turnpike for their road bed, and omitting to restore the same to its required width; by bringing said rail road into close proximity to said turnpike, and omitting, through culpable carelessness and negligence, to erect any fence, screen or suitable guard between them; by suffering the north side of said turnpike to be obstructed with large stones, and by omitting to erect a fence between the turnpike and such obstructions;" that the plaintiff while traveling on said turnpike with a horse driven before a wagon, was passed by a train of cars moving on the track of said rail road, at the sight and noise of which the horse became frightened, and ran off the north side of the turnpike on to the obstructions aforesaid, whereby the plaintiff was overturned and greatly injured.

The answer admitted the ownership of the rail road and turnpike, and denied every other allegation of the complaint.

On the trial it appeared that the turnpike company was chartered in 1800; the fifth section of the act required the turnpike to be made and maintained at the width of 30 feet between ditches, the bed to be 18 feet wide and kept in good repair. The rail road was chartered in 1833, and the corporation authorized to construct a rail road from Schenectady to Utica, and to transport persons or property thereon, by animal, mechanical or other power. The fifth section of the act authorized the directors of such corporation to select, designate and locate a line for such road, and to file in the county clerk's office certificates of such location, which when done, was declared to be the line of said road. The ninth section declared that the rail road company might intersect and construct their road upon, or across, any highway, by restoring the same "to its former state, or in a sufficient manner not to impair its usefulness." The seventeenth section required that before commencing the use of their road the defendants should purchase the said turnpike; and the eighteenth section vested the rail road corporation, after

such purchase, with all the "rights, privileges, property and estate of said turnpike company, and subjected it to all its responsibilities, duties, liabilities, pains and penalties;" and provided that after said rail road was completed, the turnpike might be abandoned, on notice to the highway commissioners; but until abandoned, the defendants were to keep the same in good repair. It also appeared that the plaintiff, while traveling upon the turnpike at a place where the two roads are in about 40 feet of each other, was overtaken and passed by a train of cars, drawn by a locomotive at the usual speed, at the sight and noise of which, the horse took fright and ran away, and injured the plaintiff as stated in the complaint. There was no fence on the north side of the turnpike, at this place; and beyond the line of the turnpike on the land of one Schenck, and where the plaintiff's wagon was upset, were large stones left by the defendants some years before in excavating earth for their road bed. At this place the two roads lay side by side for about 3000 feet, without there being any fence, screen or other guard between. Upon the question of encroachment, but two witnesses were sworn. One testified " that he built the south wall of the turnpike, about fifteen years previous, as it now stands; that it was laid a little further north than the old wall, but there was but very little difference; the variation was very trifling; was no change except here and there a trifle to get a better foundation; had been no change in the turnpike for twenty-eight years." The other said, " that at the place in question, the turnpike was 23 feet from the north ditch to the wall on the south side, and 41 feet from the wall to the north track of the rail road." The defendants showed that the rail road was constructed upon the line located by its directors, in pursuance of its charter, and then moved for a nonsuit, which motion was denied.

The cause was then submitted to the jury, and in his charge, the judge, among other things said, " that defendants had a right to build their road across or along the bed of the turnpike, but was bound to restore the same to its former state, or to leave it in such a manner as not to impair its former usefulness; that if taking a part of the bed of the turnpike for the rail road

track, or bringing the track into close proximity to the turnpike, rendered it dangerous to the safety of persons traveling the turnpike with teams, and thereby impaired its usefulness to the public, the defendants were bound, either to remove the two roads farther from each other, or separate them by protecting guards; if guards would not answer the purpose, the defendants were bound to remove the tracks farther apart; and if the jury found such were the facts, and that the defendants had narrowed the width of the turnpike by taking a part of it for their road bed and omitted to restore it to its former width, or had brought the rail road into such close proximity to the turnpike and omitted all precautions against accidents by putting up proper safeguards, so that the increased noise or sight of the cars had tended to frighten the horse and cause him to start and run, and that that was the proximate cause of the injury, the plaintiff was entitled to recover. That the defendants were bound to use all other precautions against accidents that might happen to persons traveling on said turnpike, by reason of the use of said rail road. To all of which charge the defendants duly excepted. The jury found a verdict for the plaintiff for $1500.

*E. T. Schenck,* for the plaintiff.

*C. B. Cochrane,* for the defendants.

*By the Court,* JAMES, J.   This verdict cannot be sustained, unless the injury recovered for was caused by some wrongful or negligent act of the defendants, their agents or servants. The train of cars which frightened the horse was on the defendants' own premises, in its legitimate use, moving at proper speed, and there is no pretense that its management was unskillful, negligent or improper.   But the plaintiff based her right to recover, not upon the improper, negligent or unskillful use or running of the trains, but, 1st. Because of an encroachment by the rail road upon the turnpike way, and negligently omitting to restore the same to its original width.   2d. Because

the said rail road corporation excavated earth north of the turnpike and left there exposed large stones, without having erected any protecting fence between the same and the turnpike ; and 3d. Because the defendants had brought their rail road into such close proximity to the turnpike and omitted, through culpable carelessness and negligence, to erect fences, screens or suitable guards between them.

Unless there was an encroachment by the rail road upon the turnpike, the first point must fail. Without an encroachment the turnpike was not impaired, and hence there was no omission of duty upon which to predicate negligence. The evidence not only failed to establish this allegation of the complaint, but affirmatively showed that there was no encroachment in fact. As there was no conflict of evidence, this point should have been disposed of by the court, instead of submitting it to the jury.

The plaintiff was not entitled to recover upon the second ground. It was not disputed, that many years previous, the defendants made excavations north of the turnpike, in procuring dirt for their rail road, and that large stones were left in such excavation, and that no protecting fence was ever erected between such excavation and the turnpike ; but neither the excavation, the large stones, nor the absence of a fence were the proximate or even remote cause of the accident; for which compensation is now sought. Had there been a fence between the turnpike and the stones, it is barely possible that the plaintiff might have escaped without injury ; or in the absence of the excavation or stones, the injury might have been less severe ; but it is equally possible that had it all been otherwise, the injury might have been much more severe. However that may be, no action for negligence can be predicated on such probabilities. To entitle the plaintiff to a verdict, it was incumbent on her to show that the negligence complained of was the proximate cause of the injury sought to be compensated ; and in the absence of such proof, the defendants' liability was a question of law. (14 *John.* 304.) But there are other reasons why this action could not be sustained on this ground. The excavation

and stones were on the lands of a third person, over which the defendants had no control; neither had they any right to erect a fence, either within the turnpike or on the adjoining close.

This action cannot be sustained upon the third ground, if the defendants were authorized to construct their rail road upon the line located. Their charter authorized the construction of a rail road between Schenectady and Utica, on the north side of the Mohawk river, upon such line as the directors of said corporation should designate; and the proof was undisputed, that this track was constructed upon a line designated and located in pursuance of said charter. It was, however, insisted by counsel, that this right of construction was dependent upon certain conditions which had not been complied with, and reference was made to the ninth section of the act of incorporation, to sustain that position. But it will be seen that that section has application only where the rail road crosses, intersects or encroaches upon a highway, &c. In this case it does neither. The defendants' right to construct the track at this place was fully established; and having such right, negligence cannot be predicated upon its exercise, nor upon the proper use of the track, after its construction. It was most certainly error for the judge to submit to the jury the question whether the limitations and conditions imposed by section nine of the charter had been complied with, when in law such limitations and conditions had no application to the case.

The court also erred in charging the jury "that if bringing the rail road into close proximity to the turnpike rendered it dangerous to the safety of persons traveling the turnpike with teams, and thereby impaired its usefulness to the public, the defendants were bound either to remove the two roads farther from each other, or to separate them by protecting guards." In this part of his charge the circuit judge followed the case of *Moshier* v. *Utica and Schen. R. R. Co.* (8 *Barb.* 423.) That was an action against these same defendants for an accident happening to a horse on this same turnpike, under similar circumstances. But, with due respect for the learned judge who pronounced that decision, I cannot assent to the foregoing prop-

osition.   Having the legal right to construct their rail road track upon it present location, the defendants are not required to abandon that location, or any part of it, by reason of its contiguity to the turnpike, or to erect between them "fences, screens or suitable guards." Neither the rail road nor the turnpike charter imposes any such duty, and no such obligation exists at common law.   The fact that both roads are now owned by the same corporation, adds nothing to its obligations or responsibilities.   Its duties to the public are precisely the same as they would be were the two roads owned by separate corporations. In the use and management of this rail road contiguous to this turnpike, the same responsibilities attach that would attach were this turnpike a common highway ; and it has never yet been claimed that where a rail road lay alongside of a common highway the corporation was bound to erect and maintain fences, screens or guards, between such roads.   If the obligation claimed exists against the defendants in this case, it does against every rail road in the state under like proximity.

The learned judge, in *Moshier* v. *Utica and Schen. R. R. Co. (supra,)* further asserts that "these defendants, aided by the improvements of modern science and stimulated by a laudable spirit of enterprise, were engaged in a mode of transportation unknown to the common law, and which, without the authority of statute would be an indefensible nuisance."   Also, that "when rail roads and turnpikes are parallel and in immediate contiguity to each other, persons traveling on the latter with horse teams are sometimes exposed to imminent danger by the mere sight and noise of a moving train.   It was in part the anticipation of this danger and the necessity of guarding against it, that dictated the policy of requiring the defendants to purchase the turnpike and assume the liabilities of that corporation before they should be permitted to run cars upon their road."   I am again compelled to differ from the conclusion in each of the foregoing propositions.   In the former, the defendants having the right given them by statute so to transport persons and property, it may be lawfully exercised.   Besides, such roads are now a necessity of the age, and should not be

Coy *v.* Utica and Schenectady Rail Road Co.

discriminated against in the administration of the law. (13 *Barb.* 646.)   Such corporations, in the use and management of their roads, are bound only to ordinary care, (8 *Barb.* 365,) and the omission to erect fences, screens or guards between a rail road and highway contiguous thereto, cannot be affirmed as a want of such care.

In the latter proposition I conceive the learned judge has entirely misconceived the motive which compelled the defendants to purchase the turnpike.   It was private interest, and not public policy, which produced that result.   At the time this rail road charter was granted, but little was known of the practical workings of steam power on rail roads, or what would be the effect of the sight and noise of moving trains upon teams traveling on highways contiguous thereto ; but it was supposed that the construction and operation of this road would reduce the travel on the turnpike and render its stock valueless, and the risk of a loss was legislated on to the rail road corporation.   The fact that this last named corporation was authorized to abandon the turnpike is proof that considerations of public interest did not dictate the act which compelled its purchase.

The plaintiff is not entitled to recover upon either of the grounds on which she bases her action.   And, moreover, as on the trial the charge of the judge was erroneous in the several particulars pointed out, and questions were submitted to the jury which should have been decided by the court, the judgment is set aside and a new trial granted ; costs to abide the event.

[WASHINGTON GENERAL TERM, January 1, 1855.   *Hand, Cady, C. L. Allen* and *James,* Justices.]