# NASHVILLE & DECATUR RAIL ROAD *vs.* COMANS.

[ TRESPASS FOR KILLING MULE.]

.1. *Rail road companies, liability of for killing stock; by what law governed, and how construed.*—The liabilities of rail road companies, in Alabama, for the killing or injury of stock by their cars or locomotives, are governed by the statute upon "Rail Roads," found in the Revised Code. (Rev. Code, §§ 1399–1416, both inclusive.)   This statute is to be taken and construed as one law.

2. *Same; what rail road company must show to exonerate itself from liability.*—Under this law, a rail road company, in order to exonerate itself from such liabilities as are imposed by the statute, must show that the injury complained of did not result from a failure on the part of its servants to comply with the requirements of section 1399 of the Revised Code, or from any negligence on the part of the company or its agents.—Rev. Code, § 1401.

3. *Same.*—If the company, or its agents, are not guilty of any negligence, and comply with the requirements of section 1399 of the Revised Code, then the company will not be liable for stock killed or injured by its trains or locomotives while engaged in its legitimate business.

APPEAL from Circuit Court of Limestone.
Tried before Hon. JAS. S. CLARK.

THIS was an action of trespass brought by the appellee against the Nashville & Decatur Rail Road Company, to recover damages for the killing of a mule by the locomotive of said company.   The defendant (appellant) pleaded "not guilty," and several other pleas not necessary to be mentioned, "with leave to give in evidence any matter which would be a good plea in bar to the plaintiff's action."

The proof shows that a locomotive belonging to the Nashville & Decatur Rail Road Company, drawing eight or ten loaded freight cars, while moving at a speed of from ten to thirteen miles per hour, at a point on the track where it was "a steep down grade," and just within the corporate limits of the town of Athens, struck the mule

and injured it so badly that it died. The mule, when first seen by persons on the train, was some distance off, and grazing about twenty yards from the track. The engineer blew the whistle frequently while going down this grade, and the train had arrived within seventy-five yards of the point where the mule was, when it became frightened, and " started to come pretty fast towards the track." The engineer then " blew on the brakes," which were promptly applied by the conductor and brakesmen, reversed his engine, and blew the cattle alarm continuously, and did all in his power to stop ; but notwithstanding this, the mule jumped on the road some fifteen or twenty feet in front of the engine, and ran down the track some few feet, until knocked off by the train, which had then slackened its speed very considerably.

Charles Harrison, an expert, an engineer by education and practice of many years, who had heard the testimony of the witnesses as to what was done to stop the train, (the substance of which testimony is given above,) testified that if what the witnesses said, was done, " it was all that could be done to stop a train, and that the engineer had used all the means within his power, known to skillful engineers, in order to stop the train."

The bill of exceptions is quite lengthy, and sets out much evidence, and many rulings and charges of the court below, which, in the view taken of the case by this court, it is unnecessary to notice.

On the trial, the court below permitted the plaintiff, against defendant's objection, to introduce evidence that at the place where plaintiff's mule was killed, other stock had previously been killed by the engines and trains of the company, and also allowed plaintiff to read in evidence to the jury a certain ordinance of the town of Athens, prescribing the rate of speed for trains running through the corporate limits thereof ; to both of which rulings defendant reserved an exception. There was no evidence whatever as to the condition of the road.

The court charged the jury, among other things—1st, " That if the plaintiff had proved the killing, value, and ownership of the mule, his case was made out, and the de-

fendant, in order to excuse itself, must prove that it had exercised the greatest and utmost degree of diligence to avoid the killing, and that the burden of proof was on the defendant to show such diligence;" 2d, " That section 1406 of the Revised Code of Alabama was independent of, and had no connection with, sections 1399 and 1401, and an action of trespass instituted under it might be prosecuted, and would not be barred by the limitation prescribed by section 1492, and that section 1406 was not to be construed in *pari materia* with the other sections of that chapter;" 3d, " That in this action, it is competent for the plaintiff to introduce evidence of the bad condition of the road, and to prove that other stock had been frequently killed at the place where plaintiff's mule was killed, at other times."

The defendant duly excepted to the giving of these charges, and requested the court to give twenty-one written charges, some of which the court gave, and others of which were refused.

The jury returned a verdict for the plaintiff, and judgment was rendered accordingly, and hence this appeal.

The appellant makes in this court thirty-five assignments of error, among others, " that the court erred in the 2d and 3d charges given by it."

HOUSTON & PRYOR, for appellant.
WALKER & BRICKELL, *contra*.

[ The briefs did not come into the Reporter's hands.]

PETERS, J.—This is an action of trespass, commenced on the 30th day of August, 1867. Comans was the plaintiff in the court below, and the Rail Road Company was the defendant. The complaint contains but a single count, which was in the following words—that is to say : " The plaintiff claims of the defendant the sum of two hundred dollars for wrongfully killing a mule, the property of the plaintiff, by running over [it] with locomotive, on — day of August, 1867 ; therefore this suit." The answer to this complaint was the plea of "not guilty," and several

others, "with leave to give in evidence any matter which would be a good plea in bar of the plaintiff's action." There was a verdict and judgment for the plaintiff below, and the defendant brings the case to this court, and here assigns a great number of errors committed by the circuit court on the trial below.

There was proof to show that the mule of the plaintiff, when he received the hurt from which he died, was trespassing on the roadway of the company, and was stricken by its locomotive while engaged in its lawful and ordinary business. There was also proof showing that the mule unexpectedly came on the track of the road, some fifteen or twenty feet in front of the train, when in motion at a rate from ten to thirteen miles an hour, passing over " a heavy down grade." It was a loaded freight train of eight or ten cars. It was also shown that as soon as it was seen by the agents of the company that the mule was coming on to the track of the road, the engine was reversed, the brakes put down, the whistle blown almost continuously, and every thing was done by the engineer and conductor having charge of the train, in their power, known to skillful engineers, to stop the train and to avoid striking the mule, but it was all in vain.

The main question in the case is, was the mule unlawfully killed? If it was, then the company ought to pay for it; if it was not, then the plaintiff ought not to recover.

The lawfulness or unlawfulness of the killing depends upon the diligence and care required of rail road companies in prosecuting their business in this State. Without any special legislation on this subject, a rail road company would be bound to such diligence in the prosecution of its business as would be dictated by sound reason, when applied to the successful use of the privileges necessarily incident to its franchise. No damages can be allowed for an injury accruing from a legal act performed in a legal manner.—*Brown v. Kendal*, 6 Cush. 292. Else, the ordinary pursuits of life would have to be suspended whenever there was danger of accidental injury to others, or to their property. It is the privilege of rail road companies, in

this State, to run their engines and trains at any rate of speed that would be safe for their passengers and freight. There is no rate of speed prescribed by law, except under special circumstances. Then, without our statute, rail road companies would be only bound to use such care in the movement of their cars and engines as belongs to the business they are engaged in. In such a case, what is called reasonable care would be sufficient to excuse.—*Rail Road Company v. Skinner,* 19 Penn. R. 298. The maxim, *Sic utere tuo,* applies not only to the company, but also to the owners of stock that may stray upon the track of the road. The privilege of the company is to have the track of the roadway for the exclusive use of its locomotives and trains. The company is not a tenant in common with the public and its stock, in the roadway and track of the improvement, but it is the sole and exclusive owner thereof. And the stock of the owners of the adjacent lands can not trespass upon the roadway of the company as a part of the public domain. The owners of such stock have no more right to permit it to trespass upon the roadway of the company, than the company has to quit its roadway with its engines and machinery and trespass upon the adjacent lands. The mule had no more lawful right, at common law, to be upon the rail way track when it was needed for the use of the company, than it would have had to force itself into the parlor of the rail road station house. If, in either case, it should be casually hurt, without malice towards the owner, the injury could not be said to be unlawful.—*Bordentown & S. A. Turnpike v. Camden & Amboy Railw.,* 2 Harrison, 314; *Coy v. Utica & Sch. Railw..* 23 Barb. 643; *Beers v. Housatonic Railw.,* 19 Conn. 566; 19 Penn. 298, *supra ; Bennis v. Conn. & Pass. Rivers R. R. Co.,* 42 Vt. R. 375.

But in this State, the general assembly has fixed the liability of rail road companies for killing and injuring stock found trespassing on the rail road track, and also the measure of the diligence which will excuse for such injuries. The whole law upon this subject is found in the Revised Code. The statute therein contained is compiled from the acts of the legislature, which were not carried

into the Code of 1852.—Rev. Code, p. 336, § 4399 to 1416, *both inclusive.* The first act passed on this important subject, was that of February 10, 1852, which is entitled, "An act to define and regulate the liability of rail road companies."—Pamph. Acts 1851-2, p. 45, No. 34. The first section of this act is copied into the Revised Code at section 1406. This makes the liability for the killing of stock, or its injury, absolute and peremptory.—Rev. Code, § 1406 ; Act of 1852, *supra,* § 1 ; 25 Ala. 229. The next statute, in the order of its passage, was approved February 6, 1858, and is entitled, "An act to regulate and define the duties and liabilities of rail road companies in this State."— Pamph. Acts 1857-8, p. 15, No. 13. The first and second sections of this latter act are substantially copied into the Revised Code at sections 1399, 1400. The third section of this last named enactment is in these words, to-wit : " That all railroad companies in whose employment said engineers [those named in a former section] are at the time of any *accident* occasioned by failure to comply with the provisions of the first section of this act, shall be liable for all damage done to persons, stock, or other property, on account of said failure to.comply with the provisions of this act, (Rev. Code, § 1399,) or on account of any negligence whatever on the part of the rail road company or its agents, *and in no other case.*" —Pamph. Acts 1857-8, p. 16, § 3. This section is also inserted in the Revised Code, except the words, *"and in no other case."*—Rev. Code, § 1401. After the passage of this act, there were several others enacted during the war, which are also· partly, or in whole, copied into the Revised Code; but these insurgent enactments cannot have the force of laws, except so far as they have been re-enacted or adopted by the general assembly of the rightful government.—*Texas v. White,* 7 Wall. 700. The Revised Code, as it now stands, was received and adopted by the general assembly of the Provisional government of this State on February 19, 1867. Pamph. Acts 1866-7, p. 718. And " all laws and parts of laws of the Revised Code of Alabama, except such as conflict with the constitution and laws of the United States, or the constitution of this State," were continued in full

force and effect by the act of July 27, 1868.—Pamph. Acts 1868, p. 7.

From this statement, it appears that the law of the Revised Code, on the important subject of railroad companies and their duties and liabilities in this State, must be taken as a whole and construed together as one law. Such was evidently the legislative intent.—1 Kent, (marg.) 463 ; Dwarris on Statutes, 569 ; *United States v. Freeman*, 3 How. 556, 564 ; *Wade v. Judge*, 5 Ala. 130, 133. The act of 1858 really superseded the act of 1852, and limited the liability of railroad companies, for injuries or destruction of stock, *to accidents occasioned by a failure* to observe the precautions mentioned in the said act, and by negligence. If, then, the agents and engineers of the railroad company, in running its trains, comply with the requirements of section 1399 of the Revised Code, are not guilty of any negligence, the company is not responsible for damage to stock or other property injured by its cars or locomotives engaged in the lawful business of the company.—Rev. Code, § 1401. This conclusion does not conflict with the decision in the case of *The Nashville & Chattanooga Railroad v. Peacock*, (25 Ala. 229,) because that case involved the construction of the act of 1852 only, and occurred before the passage of the act of 1858, which was a very material modification of the law as it stood before its passage. At the time it was made it was correct ; but the law is not altered by statute, and it does not apply. The result, then, of the foregoing decision is, that the railroad company is liable for the killing or injury of stock by its cars or locomotives, when its agents or servants *fail* to comply with the requirements of section 1399 of the Revised Code, even when *there is no negligence* attributable to the company, or to its agents or servants; and the company is also liable when these requirements are complied with, and *there is also any negligence* on the part of the company or its agents.—Rev. Code, §§ 1399, 1401 ; *Memphis & Charleston Railroad Company v. Bibb*, 36 Ala. 699. But the company is not liable for such injuries, if the requirements aforesaid are complied with, and *there is no negligence* on the part of the company or its

agents.—1 Redfield on Law of Railroads, 465, *et seq.*, *and cases there cited.*

The second charge given by the court, on the trial below, was not in conformity with the above construction of the statute in the Code. It was, therefore, erroneous.

It is not perceived what connection the bad condition of the road, or the former destruction of stock, have had with a failure to comply with the requirements of the statute, or with the negligence of the company or its agents. This was a matter foreign to the substance of the issue, unless it was shown that the bad condition of the road in some way contributed to cause the injury to the mule. But nothing of this kind appears in the testimony. The third charge was, therefore, also erroneous.

As the cause will have to be reversed and sent back for a new trial, it is not necessary to discuss the numerous charges asked by the defendant and refused by the court below. In the main, the learned judge was correct in his refusals. The charges based upon the allegation of the diligence required by the statute, ignore the further fact that mere statutory diligence is not enough; but in connection with it there must be an absence of negligence, in order to exonerate the company from blame. Whatever else may be done, if there is negligence also, and the injury is the result of such negligence, the company is liable.

The evidence of the incorporation of the town of Athens should have been rejected ; and so likewise the evidence of its ordinance. The general assembly has prescribed by law how a railway train shall enter an incorporated town or city, and how it shall quit it. - Rev. Code, § 1399. The corporation cannot contravene this law by its ordinance, so as to add to the responsibilities of the company for the injury to stock trespassing on the railway track, whether within or without the limits of the city. The charter of the company is its authority to move its trains along its roadway, whether within or without the limits of a town or city, and when this authority does not fix a rate of speed, this is left to the sound discretion of the company. And unless the legislature has bestowed upon the town or city corporations through which the road runs power over this

question, they have nothing to do with it. If a railway train should nevertheless enter a town or city at such a rate of speed as to endanger the lives of its citizens who might necessarily be about the railway track, this would amount to negligence or want of care, which would render the company liable for an injury unnecessarily thus occasioned. A railroad company is bound to make a prudent use of its lawful rights.—*Cotterill v. Starkey,* 8 C. & P. 691; 1 Bla. Com. 806; 2 Bouv. Inst. 2379. This is a principle of common law, and it is also the purpose of the statute.

The ordinance of the town of Athens can not, then, influence the issue in this case. It was, therefore, improperly admitted.

For the errors above pointed out, the cause is reversed and remanded for a new trial.