# Joiner *v.* Winston.

*Statutory Action for Damages, for Trespasses by Cattle.*

1. *Trespasses by cattle running at large; liability of owner for damages, at common law, and by general statutes.*—At common law, the owner of cattle was required to keep them confined on his own land, and was liable to an action for damages if they escaped and trespassed on the lands of another; but this rule of the common law is not of force with us, being inconsistent with the general statutes relating to estrays, inclosures, and trespasses by cattle, which, in effect, treat uninclosed lands as common pasture, and require the owner or occupier of lands, seeking to avoid trespasses by cattle running at large, to inclose against them.

2. *Same, under special statute in Sumter and Pickens counties.*—Under the special statute approved February 19th, 1867, entitled "An act in relation to fences, the protection of crops and other property, in Sumter and Pickens counties" (Sess. Acts 1866-7, p. 586) ; which declares that the boundary lines of any designated tract or district, when established under the provisions of said act, "shall be, and they are hereby made and constituted a lawful fence," and gives an action for damages against any one who suffers his cattle to trespass on the lands of another within the designated district,— the rule of the common law is restored, and the liability of the owner of the trespassing cattle is not dependent on his residence within the designated district in which the trespass was committed.

(8)

| 68 | 129 |
| 110 | 311 |
| 68 | 129 |
| 123 | 419 |
| 68 | 129 |
| 128 | 651 |
| 68 | 129 |
| 129 | 278 |
| 68 | 129 |
| 130 | 595 |
| 68 | 129 |
| 137 | 625 |
| 137 | 644 |
| 68 | 129 |
| 140 | 179 |
| 68 | 129 |
| 143 | 226 |
| p143 | 227 |

[Joiner v. Winston.]

3. *Same; establishment of district under said law.*—By the terms of said special statute (§ 4), its provisions do not apply to any particular district or portion of either of said counties, until the Commissioners Court of the county has ascertained and declared that a majority of the land-owners in such district "are desirous of availing themselves of its provisions;" and while the mode of ascertaining that fact is left to the discretion of said court, its records must show that the fact was ascertained. An order entered on the minutes, "that the 'fence law' is declared of force in" several designated beats, "and that new elections be held in" several other beats, does not show enough to uphold the jurisdiction of the court, and is a nullity.

4. *Commissioners Court; jurisdiction and powers.*—The Commissioners Court, in the exercise of the statutory powers with which it is clothed, whether judicial or *quasi* legislative, is esteemed an inferior tribunal of limited jurisdiction; to uphold its acts or sentences, its records must affirmatively show the existence of the facts upon which its authority depends; and the existence of a jurisdictional fact, or its determination of the existence of such fact, will not be presumed from the exercise of jurisdiction, nor can it be inferred by argument from other recitals.

5. *Constitutional questions; rule of court as to decision of.*—This court will not decide a question as to the constitutionality of a statute, where the record presents any other clear ground on which its judgment may be based.

APPEAL from the Circuit Court of Sumter.

Tried before the Hon. LUTHER R. SMITH.

This action was brought by William O. Winston, against Orrin R. Joiner, to recover damages for trespasses committed by defendant's cattle on plaintiff's lands, situated in "Lacey's Beat" in said county; and was commenced before a justice of the peace, on the 1st August, 1874. On appeal to the Circuit Court, by the defendant, the plaintiff there filed an amended complaint, claiming $25 damages, "for that on or about the 27th July, 1874, and at divers other times after March 6th, 1876 (?) and before the commencement of this suit, the defendant's cattle entered into and upon plaintiff's lands, where he had a crop planted and growing, and trespassed upon, trod down and destroyed plaintiff's crop of corn, cotton, oats and grass, which was then growing on said lands; to plaintiff's damage, to the said amount of $25. And plaintiff avers, that said defendant, as the owner of said cattle, voluntarily permitted his said cattle to go at large, off his own premises, at the times specified; and while said defendant, as the owner of said cattle, voluntarily permitted them to go at large, the said cattle entered into and upon said lands of said plaintiff, and trod down and destroyed plaintiff's crop as aforesaid, on his said lands. And plaintiff avers that said lands are situated in Sumter county, Alabama, and in the beat known as 'Lacey's Beat;' and that under an act of the General Assembly of Alabama, entitled," &c., "in the words and figures following, to-wit," &c., "the Court of County Commissioners of said county declared said act to be in force

[Joiner v. Winston.]

in that portion of said county known as 'Lacey's Beat,' before the time said trespass was committed, in the words and figures following to-wit: 'November term, 1867. Ordered by the court, that the *Fence law* be declared in force in the Sumterville, Payneville, Gainesville, Jones' Bluff, and Lacey's Beats, and that new elections be held in Livingston, Brewersville and Belmont Beats.' And plaintiff further avers, that said act of the General Assembly was amended and approved March 6th, 1876, in the words and figures following, to-wit.—See Acts 1875-6, p. 355. Wherefore plaintiff prays judgment," &c.

To this complaint the defendant demurred, assigning as causes of demurrer, 1st, "that said complaint fails to aver that the defendant, the owner or manager of said cattle, lived in the said beat or section, over or in reference to which said court, as alleged therein, extended said act, or made the same applicable, or put the same in force; or that the premises of this defendant, from which said cattle were so permitted to go at large, were in said beat or section;" and, 2d, that said special statute is unconstitutional. The court overruled the demurrer, and the defendant then filed a special plea, as follows: "That said special statute was never put in force in 'Lacey's Beat' by said court, as required by said statute, and that the only proceedings of said court, in reference to putting said act in force in said beat, are found on page 455 of the record of said proceedings, and are as follows," setting out the order above copied; "and that the alleged trespass complained of occurred in said beat, and not elsewhere." The court sustained a demurrer to this plea, and the cause was then tried on issue joined on the plea of not guilty.

By written agreement entered of record, the special statutes referred to in the pleadings were considered as set out in full. The said statute approved February 19th 1867, contains four sections, the first of which declares, "that hereafter the boundary lines of each lot or tract of land in Sumter and Pickens counties, or any select or designated portion thereof, shall be, and they are hereby made and constituted a lawful fence, upon the terms and conditions hereinafter mentioned." The second section provides, "that it shall not be lawful for the owner or manager of any horse, mule, cattle," &c., "voluntarily to permit any such animals or stock to go at large, off his or her own premises; and the owner of any such animals, so permitted to go at large, shall be liable to any party injured by such stock, to the full amount of the damage sustained, to be recovered before any court of competent jurisdiction." The third section gives a party injured

by such trespassing cattle a remedy by action before a justice of the peace, declaring a lien on the stock from the date of the warrant. The fourth section is copied at length in the opinion of the court, and the whole statute may be found in the Session Acts 1866-7, pp. 586-7. The said amendatory act, approved March 6th, 1876, makes no change in the first section; by its second section, it gives a penalty of 25 cents "for each and every entry or trespass of any such animals," in addition to the liability for all actual damages; amends the third section, by authorizing the impounding of the cattle found trespassing, in addition to the remedy by action; and adds to the fourth section the following proviso : "*Provided,* however, that where the provisions of this act *has* been so declared to exist in any district or select portion of said counties by said court, said act shall be held to be valid and in force in said districts or select portions of said counties."—Sess. Acts 1875-6, p. 355.

The overruling of the demurrer to the complaint, and the sustaining of the demurrer to the special plea, are now assigned as error.

SNEDECOR & COCKRELL, for appellant.

COOK & LITTLE, *contra.*

BRICKELL, C. J.—By the common law, every man was bound to keep his cattle within his own close, and to prevent them from escaping or straying upon the premises of his neighbor. If they did escape, going without permission upon the lands of another, the owner was liable in trespass for the resulting damages. This rule of the common law is not of force in this State, being inconsistent with the general statutes in reference to estrays, inclosures and trespasses by cattle, which, in effect, treat lands uninclosed as common pasture, and require the owner or occupier of lands, seeking protection from trespasses by cattle running at large, to inclose against them.—*N. & C. R. R. Co. v. Peacock,* 25 Ala. 229; *Smith v. Causey,* 22 Ala. 568; *Tankersley v. Wedgworth, Ib.* 677 ; *Woodward v. Purdy,* 20 Ala. 379.

The plain purpose of the special statute, on which this action is founded, entitled "An act in relation to fences, the protection of crops and other property, in Sumter and Pickens counties," approved February 19, 1867 (Pamph. Acts, 1866-7, p. 586), was the adoption and establishment of the rule of the common law, in the counties named, or such parts thereof as were designated by the Commissioners Court. By the terms of the statute, whenever any particular part of

[Joiner v. Winston.]

the county was designated and subjected to the operation of the statute, the boundaries thereof, whether marked by monuments, or surrounded by inclosures, or not, became at once, by operation of law, *a lawful fence.* Whoever permitted his cattle to go at large, off his premises, if they escaped or strayed on the premises of another, within the designated part or district, became liable for all damages done by them. The residence of the owner or manager of the cattle, within the designated district, is not an element of the liability. The liability arises, because he has suffered his cattle to go at large, and they have passed within the district, the boundaries of which constitute *a lawful fence,* doing damage to the lands of another. The statute would but ill accomplish its purposes, if it protected the owner or occupier of lands from the trespasses only of cattle owned by those residing within the district, requiring him to fence against, or submit to the trespasses, of the cattle of owners residing in adjoining districts. The designated district would be converted into common pasture for all, except those residing within it. The first ground of demurrer to the complaint was not well taken, and was properly overruled.

The terms and conditions upon which the special act was to become operative in any part or district of the county, are expressed in the fourth section of the act, which reads: "That the Court of County Commissioners of said county may declare this act to be in force in said counties, or any select portion thereof, whenever said court is satisfied that a majority of the land-owners in said counties, or in any district in said counties, are desirous of availing themselves of the provisions of this act; but the provisions of this act shall not apply to any portion of said counties, where it is not so declared to apply by said court." The only evidence that the Court of County Commissioners had declared "Lacey's Beat," the place of the trespass, to be subject to the act, was the minute-entry on the records of the court, in these words: "November term, 1869. Ordered by the court that the 'Fence Law' is declared in force in the Sumterville, Paynesville, Gainesville, Jones' Bluff, and Lacey's Beats, and that new elections be held in Livingston, Brownsville, and Belmont Beats."

The Court of County Commissioners is clothed with judicial and *quasi*-legislative power, by the general statutes relating to it. Whether it is in the exercise of the one or the other power, when it affects the rights of individuals, it is esteemed as an inferior tribunal, of statutory and limited jurisdiction; and to the validity of its acts or sentences, it is necessary that its records show affirmatively the facts upon which its

authority depends.—1 Brick. Dig. 441, §§ 203, 206 ; *Henry v. Cohen*, at the present term.  If, before exercising authority or jurisdiction, the court must first ascertain the existence of a particular fact, or of particular facts, its records must show that, before proceeding to act, the facts were ascertained. The ascertainment is not presumed, or inferred, from the exercise of the jurisdiction or authority.—*Gunn v. Howell*, 27 Ala. 663 ; *Foster v. Glazener, Ib.* 390 ; *Owen v. Jordan, Ib.* 608 ; *Wyatt v. Rambo*, 29 Ala. 510.

In the enactment of the special statute now under consideration, the law-making power was subjecting particular localities to a policy, and to rules of law, inconsistent with the policy and law prevailing generally within the State. Whether a locality should be subjected to the enactment was committed to the determination of the land-owners within it, their rights and interests being peculiarly affected and involved.  The Commissioners Court was charged with the duty of ascertaining their sense and determination.  The mode of ascertaining is not prescribed, and it is competent for the court to adopt any mode adapted to the end—an election to be held by its authority, or any other appropriate mode.  Until their determination is made known in some appropriate form, the law cannot become of force.  The Commissioners Court is without power to put it in force, until the fact is ascertained that a majority of them *are desirous of availing themselves* of its provisions.  It is only when this fact is ascertained, that the court may declare the act of force.  The fact not being ascertained, in the words of the act, its provisions "shall not apply."

The record of the Commissioners Court does not show that a majority of the land-owners in "Lacey's Beat" were desirous that the act should be of force in that district; nor does it show that the court had ascertained such was their determination.  Of its own volition, the court declared the act of force within that district.  The act does not confer that power on the court, and the declaration of the court is a mere nullity.  From the fact that the court ordered new elections in other beats or districts of the county, it may be argued, or inferred, that elections had been held in the beats in which the act was put in force.  But the jurisdiction of inferior tribunals of statutory and limited powers cannot be supported by mere argument or inference from the recitals of their records.—*McCravey v. Remson*, 19 Ala. 430.  The Circuit Court erred in sustaining the demurrer to appellant's special plea.

This conclusion renders it unnecessary and improper to consider the objections made to the constitutionality of the

[May v. Carlisle.]

special statute. Upon such questions courts do not enter,
when the case before them can be determined upon other
grounds.—*Smith v. Speed*, 50 Ala. 276; Cooley's Const. Lim-
itations, 163.

Reversed and remanded.