# Wilhite *v.* Speakman.

*Action for Statutory Penalty for Injuries to Animal Tres-*
*passing on Uninclosed Land.*

1. *Uninclosed lands; cattle running at large.*—In this State, except
where the rule is changed by local statutes, uninclosed lands are re-
garded as common of pastorage, over which cattle or stock may be
suffered to run at large; and if the owner of the land desires to protect
himself against damage, he must erect and maintain a lawful fence
around them.

2. *Same; rights and liabilities of owner, in cases of trespassing cattle.*—
Where lands are not inclosed by a lawful fence (Code, §§ 1586-7), the
rights of the owner, as against cattle or stock running at large, are only
defensive: he may have the trespassing animals estrayed, and may use
all proper means to drive them out of his field, taking care to employ
no unnecessary force; but, for any injury which is the natural or proxi-
mate consequence of a wrongful act on his part, outside of these defen-
sive measures, he is liable to the statutory penalty of five times the
amount of the injury.

3. *Same; case at bar.*—The plaintiff's horse having been caught by
the defendant while trespassing in his field, which was not inclosed
with a lawful fence, and tied with a rope to the limb of a tree, where he
was found dead the next morning, the appearances indicating that he
had been choked to death; the liability of the defendant to the statu-
tory penalty does not depend on the question of negligence *vel non* in
the treatment and care of the horse, but, his act being unlawful, on the
question whether the death of the animal was the natural and proxi-
mate consequence thereof.

APPEAL from the Circuit Court of Cullman.

Tried before the Hon. JAMES AIKEN.

This action was brought by Jackson D. Wilhite, against
William S. Speakman, to recover $500, alleged to be five times
the value of plaintiff's horse, which was killed by defendant
while trespasssing in his field ; and was commenced on the 19th
of September, 1883. The cause was tried on issue joined on
the plea of not guilty, and resulted, under the rulings of the
court, in a verdict and judgment for the defendant. On the
trial, as appears from the bill of exceptions, it was proved that,
on the morning of August 23, 1883, the defendant found the
horse in his field, which was inclosed with a fence, caught him,
and tied him with a bridle to a tree ; that he returned to the
horse about noon, took off the bridle, "and tied him with a
rope doubled around his neck, to a swinging limb of a hickory
tree in the field, where he was found dead the next morning,
with the rope drawn tight around his neck, his neck so swollen

that the rope was half hidden therein, and his tongue protruding from his mouth. The defendant offered evidence tending to show that he tied the rope in such a manner that it was loose when he tied it, and could not slip or tighten. There was no evidence that the horse, after being so tied up, was fed or watered by the defendant or any one else. The defendant offered evidence, also, tending to show that, at noon on that day, he sent word to the plaintiff, by his son, that his horse was tied up, and where it could be found; and that this message was repeated to plaintiff, on his return home at night, he having been absent from home during the day. It was proved, also, that the defendant and plaintiff each resided about half a mile from the said field; that the fence around the field was not over four feet in heighth, and in some two or three places not more than two feet and a half; and that corn, peas and oats were growing in the field.

On this evidence, the court charged the jury as follows: (1.) "Under the evidence in this case, if the defendant found the plaintiff's horse in his field, he had the right to catch and tie him up, if he did so in a careful and prudent manner." (2.) "That it was a question of negligence for the jury, and the whole question would be left to the jury, under the evidence, as to whether the defendant was guilty of negligence in the manner in which he tied up the horse, or in leaving him tied for the length of time shown by the evidence; and if they believed, from all the evidence, that the defendant was not guilty of any negligence, they must find a verdict for him."

The plaintiff duly excepted to each of these charges, and requested the following (with other) charges in writing: (1.) "If the jury believe the evidence, they must find in favor of the plaintiff." (2.) "Under the evidence, the fence inclosing the defendant's field was not a lawful fence." (3.) "Under the evidence, the act of the defendant in tying up the plaintiff's horse was a wrongful act; and if the jury believe, from all the evidence, that this wrongful act caused, or proximately contributed to the death or destruction of the horse, then they must find a verdict for the plaintiff." The court refused each of these charges, and the plaintiff excepted to their refusal.

The charges given, and the refusal of the charges asked, are now assigned as error.

GEO. H. PARKER, and HAMILL & LUSK, for the appellant, cited *M. & C. Railroad Co. v. Peacock*, 25 Ala. 229; *M. & O. Railroad Co. v. Williams*, 53 Ala. 595; *Pruitt v. Ellington*, 59 Ala. 454; *Smith v. Causey*, 22 Ala. 568; *Dickson v. Parker*, 3 How. Miss. 219; 34 Amer. Dec. 78; 49 Amer. Dec. 259.

26

CLOPTON, J.—During recent years, many special statutes have been enacted, which prohibit the owner of animals to suffer them to go at large off his premises, within designated localities, and making him liable for all damages done thereby to the crops of another. The proprietor of the premises, on which the injury is done, may take possession of, and impound the trespassing animal, in the manner, and subject to the regulations, provided by the statutes. Otherwise than as thus enacted and regulated, the common-law doctrine, relating to trespasses by and upon animals, does not prevail in this State. The general statute in force, where not superseded by such special and local laws, definitely defines the height, closeness and character of the inclosures and fences.—Code, § 1586; *Acts* 1878-9, 75. The succeeding section, 1587, exempts the owner of the animal from liability for any trespass by breaking into lands, not inclosed as required; and further provides, that any person who injures, or destroys any such animal, shall be liable to the owner for five times the amount of the injury done. The statutes are founded on the docrine, that in this State uninclosed lands are regarded as common of pasture, and that owners of stock have a right to suffer them to run at large. If the proprietors of land would protect themselves from damage, they must inclose them as required by statute. *Mo. & O. R. R. Co. v. Williams*, 53 Ala. 595; *M. & C. R. R. Co. v. Peacock*, 25 Ala. 229.

The court, without respect to the character and condition of the fence inclosing the field, instructed the jury, that if the defendant found the horse in his field, he had the right to catch him and tie him up, if he did so in a careful and prudent manner; that it was a question of negligence, and if the jury believed, from all the evidence, that the defendant was not guilty of negligence in the manner in which he tied the horse, nor in leaving him tied, they must find a verdict for him. There is no conflict in the evidence, that the defendant caught the horse in the morning, and using first a bridle, and afterwards a rope, tied him to a tree in the field, where he was left until the next day, when he was found dead. The instruction of the court can not be maintained, except on a supposed right of the defendant to distrain under the circumstances of the case. The right to distrain does not exist, when there is no liability on the plaintiff to compensate for the damage done to the crops. The owner of lands may dispense with a statutory inclosure, if he chooses, and leave his premises open to animals running at large. If an animal should break into his lands, in such case, his rights are only defensive; the same as against any other trespass, where there is no right to distrain. In a proper case, he may regularly estray the animal; and

whether the owner be known or unknown, he may use such means as are requisite to turn or drive it outside the inclosure, taking due care to employ no unnecessary force. He may protect his premises against damage from the trespass, provided he does not injure or destroy the animal.

To entitle the plaintiff to recover, he need only show that the fence of the defendant was not constructed in substantial compliance with the statutory requirements, and that injury to the horse arose out of some act, done, commanded, or directed by the defendant.—*Smith v. Causey*, 22 Ala. 568. The declaration of the statute is, "if any person injures, or destroys any such animal, he is liable to the owner for five times the amount of the injury done." Force and injury are the gist of the action under the statute—not negligence. When the fence is insufficient, the statute does not exempt from liability, by reason of the negligence. Seizing the horse, and confining him in the field, if the fence was not a lawful one, was wrongful; and being the exercise of force, constituted a trespass, which fixed on the defendant a liability for the injury caused thereby. *Dickson v. Parker*, 34 Am. Dec. 78; *Mooney v. Maynard*, 18 Am. Dec. 699. Whenever there is an unjustifiable trespass, or the wrongful taking of the property of another, the law implies damage; and though no sensible injury be proved, the owner is entitled to recover some damages.—*Parker v. Mise*, 27 Ala. 480. If the fence of the defendant is found insufficient, under proper instructions from the court, on the other undisputed facts, he is liable for whatever injury was done, including the destruction of the horse, if its death was the natural and proximate consequence of the injurious acts of catching, tying and leaving the horse in the field. The manner of tying, and the time the horse was left tied in the field, were proper circumstances to be considered by the jury, not on the question of negligence, but in determining whether the death of the horse was the natural and proximate consequence of having thus been tied and left; and are material in ascertaining the amount of the injury done. If the horse died from other causes, the defendant would not be liable for its destruction, though he would be for any less injury. The failure of the plaintiff to go or send, on being informed, and untie the horse, does not operate to relieve the defendant from liability for his antecedent wrongful act.

An application of the foregoing rules to the several charges given and refused will sufficiently designate, for the purposes of another trial, which were improperly given, or improperly refused, without reviewing them *seriatim*.

Reversed and remanded.