(82 South. 653)

GRIFFIN v. FOWLER. (6 Div. 469.)

(Court of Appeals of Alabama. June 3, 1919.)

1. ANIMALS. ⬤50(1) — STOCK DISTRICTS — FENCES.

Code 1907, § 4251, relating to stock, recognizes the common-law rule of the state, and protects the owners of domestic animals in their rights of commons, and the duty of the landowner to fence against them.

2. ANIMALS. ⬤100(3) — STOCK DISTRICTS — STATUTES—PLEADING.

A complaint stating that plaintiff claims damages done by defendant's cow in plaintiff's garden in the town of B., a stock-law district, and that plaintiff claims a lien on the cow for the satisfaction of the damages, does not state a cause of action; it not appearing that the damage resulted from a trespass, or that defendant was guilty of some wrong or breach of duty, or that he was liable by contract, or otherwise.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Suit by Mrs. R. J. Fowler against Rena Griffin. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

See, also, ante, p. 44, 81 South. 426; 203 Ala. 98, 82 South. 112.

G. P. Benton, of Bessemer, for appellant. Goodwin & Ross, of Bessemer, for appellee.

BROWN, P. J. The case of Joiner v. Winston, 68 Ala. 129, was an action of trespass by Winston against Joiner for damages resulting from the defendant's cattle trespassing upon the plaintiff's crops, and was grounded upon a special act of the Legislature, the material provision of which is as follows:

"An act in relation to fences, the protection of crops and other property in Sumter and Pickens counties.

"Section 1. Be it enacted by the Senate and House of Representatives of the state of Alabama in General Assembly convened, that hereafter the boundary lines of each lot, or tract of

land in Sumter and Pickens counties, or any select and designated portion thereof, shall be, and they are hereby made and constituted a lawful fence, upon the terms and conditions hereinafter mentioned.

"Sec. 2. Be it further enacted, that it shall not be lawful for the owner, or manager of any horse, mule, ass, hog, goat, sheep, cattle, or other stock, voluntarily to permit any such animals or stock to go at large off his or her own premises; and the owner of any such animals, so permitted to go at large, shall be liable to any party injured by such stock to the full amount of the damage sustained, to be recovered before any court of competent jurisdiction." (Laws 1866–67, p. 586.)

Section 2 of this act was an adoption of the English common law, imposing a duty on the owner of domestic animals to restrain them on his premises, and operated an abrogation of the common law prevailing in this state in so far as it applied to Sumter and Pickens counties. The gravamen of the complaint in that case was "that said defendant, as the owner of said cattle, voluntarily permitted said cattle to go at large off of his own premises." The court, construing and applying the act, said:

"By the common law, every man was bound to keep his cattle within his own close, and to prevent them from escaping or straying upon the premises of his neighbor. If they did escape, going without permission upon the lands of another, the owner was liable in trespass for the resulting damages. This rule of the common law is not of force in this state, being inconsistent with the general statutes in reference to estrays, inclosures, and trespasses by cattle, which, in effect, treat lands uninclosed as common pasture, and require the owner or occupier of lands, seeking protection from trespasses by cattle running at large, to inclose against them. N. & C. R. R. Co. v. Peacock, 25 Ala. 229; Smith v. Causey, 22 Ala. 568; Tankersly v. Wedgworth, 22 Ala. 677; Woodward v. Purcy, 20 Ala. 279.

"The plain purpose of the special statute on which this action is founded, entitled 'An act in relation to fences, the protection of crops and other property in Sumter and Pickens counties,' approved February 19, 1867 (Pamph. Acts, 1866–67, p. 586), was the adoption and establishment of the rule of the common law in the counties named, or such parts thereof as were designated by the commissioners' court. By the terms of the statute, whenever any particular part of the county was designated and subjected to the operation of the statute, the boundaries thereof, whether marked by monuments or surrounded by inclosures or not, became at once, by operation of law, a lawful fence. Whoever permitted his cattle to go at large off his premises, if they escaped and strayed on the premises of another within the designated part or district, became liable for all damages done by them. The residence of the owner or manager of the cattle within the designated district is not an element of the liability. The liability arises because he has suffered his cattle to go at large and they have passed within the district, the boundaries of which constitute a lawful fence, doing damage to the lands of another. * * *

"In the enactment of the special statute now under consideration, the lawmaking power was subjecting particular localities to a policy and to rules of law inconsistent with the policy and law prevailing generally within the state."

[1] The Code of 1907, § 4251, reads as follows:

"4251 (2115) (1367) (1589) (1285) (1102). *Trespass by Stock through Lawful Fence or in Common Inclosure.*—Every owner of cattle, horses, mules, hogs, sheep, jacks, jennets, or goats, shall be liable in damages for all injuries and trespasses committed by such animals by breaking into the inclosure or grounds of another inclosed by a lawful fence, *or within a stock-law district,* or running at large in a common inclosure within which more persons than one are cultivating land without the consent of all such persons; and the person injured shall have a lien on the animal trespassing for the damages, and for every subsequent trespass double damages."

It will be noted that this section does not declare that the boundaries of such stock-law district shall be a lawful fence, and makes no attempt to establish the English common-law rule, as did the act of 1867. On the contrary, it manifestly recognizes the common-law rule of this state, protecting the owners of domestic animals in their right of commons, and the duty of the landowner to fence against them. Hurd v. Lacy, 93 Ala. 433, 9 South. 378, 30 Am. St. Rep. 61; Clear Creek Lumber Co. v. Gossom, 151 Ala. 450, 44 South. 404; Wilhite v. Speakman, 79 Ala. 400; Means v. Morgan, 2 Ala. App. 547, 56 South. 759; Jones v. Duncan, 4 Ala. App. 388, 58 South. 972.

By reference to the original act of February 26, 1887, the origin of the italicized portion of section 4251, quoted above, it seems clear that its purpose was to visit liability only where the law imposed on the owner of domestic animals the duty to restrain them on his own premises located in a stock-law district. For convenience, we quote that act:

"An act to make stock passing from one stock law district into another, and the owners thereof, liable for damage.

"Section 1. Be it enacted by the General Assembly of Alabama, that wherever in the state of Alabama, two or more districts in which stock of any kind are prohibited from running at large, lie adjacent to each other and any stock passes from one of said districts into another, said stock and owner thereof shall be liable for damages, in every respect to be enforced in the same manner as if they lived within the district where the damage is committed.

"Sec. 2. Be it further enacted, that an entire county or any portion thereof, is a district, within the meaning of the foregoing section.

"Sec. 3. Be it further enacted, that all laws and parts of laws, so far as they are inconsistent with this act, be and the same are hereby repealed.

"Approved February 26, 1887." Laws 1886–87, p. 67.

The legislative purpose to abrogate and destroy the right of commons and to visit liability upon the owner of domestic animals for the exercise of this right, when his animals, without his knowledge or procurement, wandered into a stock-law district, is wholly foreign to this act. This conclusion is reinforced by section 5889 of the Code of 1907, which lays down as elements of liability in such cases that "the owner must knowingly, voluntarily, negligently, or willfully, permit animals or stock to go at large on the premises of another in such district."

This question, however, is foreclosed by the ruling of the Supreme Court in this case, which, by applying the principle announced in Joiner v. Winston, supra, reads into section 4251 of the Code the provisions of the special act of 1867, rather than the provisions of the general act of 1887, from which the italicized portion of that section was taken. Ex parte Fowler, 203 Ala. 98, 82 South. 112.

[2] In disposing of the case, the only question dealt with was whether the complaint was subject to the fourth and tenth grounds of demurrer. This question is given a negative answer (Ex parte Fowler [Sup.] 82 South. 112 [1]), and the judgment of this court was reversed and the cause remanded for further consideration. On further consideration, the opinion prevails that the complaint in this case does not state a "substantial cause of action," and the judgment of the trial court must again be reversed. The complaint is in the following words:

"The plaintiff claims of defendant $20 damages done by the defendant's yellow and white spotted milch cow, to wit, during months of August and September, 1916, in the plaintiff's garden in the town of Brighton, a stock-law district in Jefferson county, Ala., which said damages are more particularly set forth as follows:

"Eating and tearing down beans.................$6 00
"Eating and tearing down corn................... 4 00
"Eating and tearing up okra..................... 2 50
"Eating and injuring beets...................... 2 50
"Breaking through fence and trampling on
 vegetables ................................... 2 00
"Taking up cow.................................. 1 00
"Feeding and watering cow eight days.......... 2 00

"And the plaintiff claims a lien on said cow for the satisfaction of said damages and charges."

For aught that appears from this complaint, the cow was rightfully in the plaintiff's garden. There is certainly nothing in the averments of the complaint to show the animal was trespassing. It is equally as clear that it does not charge the defendant with any wrong or breach of duty to the plaintiff imposed by law or otherwise, and it shows no contract obligation, express or implied, on the part of the defendant to pay the plaintiff the several items of damage claimed. It is certainly essential to a statement of a "sub-stantial cause of action" that it must appear from the averments of the complaint that the damage resulted from a trespass by the defendant's animals, or that the defendant was guilty of some wrong or breach of duty, or that he was liable by contract, express or implied, to pay the plaintiff some part of the damages claimed. The complaint therefore, was subject to some of the grounds of demurrer, and the court erred in overruling the demurrer. Aside from this, the judgment must be reversed because the complaint does not state a substantial cause of action and will not sustain the judgment. Goodwin v. Forman, 114 Ala. 489, 21 South. 946; Kirkland v. Pilcher, 174 Ala. 170, 57 South. 46. This defect is not within the curative provisions of section 4143 of the Code of 1907. Browder v. Gaston, 30 Ala. 677; Childress v. Mann, 33 Ala. 206; Douglas v. Beasley, 40 Ala. 142; Winnemore v. Mathews, 45 Ala. 449; Taylor v. Jones, 52 Ala. 78; Thomas v. Stepney, 58 Ala. 365; St. Clair County v. Smith, 112 Ala. 347, 20 South. 384; L. & N. R. R. Co. v. Williams, 113 Ala. 402, 21 South. 938.

Reversed and remanded.