## NASHVILLE & CHATTANOOGA RAILROAD CO. *vs.* PEACOCK.

1. The act of 1852 (Pamph. Acts 1851-2, p. 45) " to regulate and define the liability of railroad companies," does not conflict with the act of 1850 (Pamph. Acts 1849-50, p. 171) granting the right of way through Jackson county to the Nashville and Chattanooga Railroad Company.

2. To entitle the plaintiff to a recovery against a railroad company under the act of 1852, it is only necessary for him to prove property in the stock or cattle killed, their value, and that they were killed by the defendant's cars or locomotives.

3. Whether any degree of care and diligence on the part of the defendant will excuse it, *quære?*

4. That the cattle were killed while roaming on lands which did not belong to their owner, is no defence to the action, as the doctrine of the common law in relation to *damage feasant* has never been adopted in this State.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. THOS. A. WALKER.

ROBINSON & COWAN, and N. HARRIS, for the appellant.

BELSER & RICE, *contra.*

LIGON, J.—The proceedings in this case were commenced by the appellee against the appellants, before a justice of the peace, under the act "to regulate and define the liability of railroad companies," approved February 10th, 1852 (Sess. Acts 1851-2, pp. 45-6.) The justice of the peace rendered judgment for the plaintiff for the sum of fifteen dollars, when the case was removed by writ of *certiorari* to the Circuit Court. In that court a trial was had on the merits, before the judge, without the intervention of a jury. The proof is set out in the bill of exceptions, and establishes that the appellee was the owner of a cow, valued at fifteen dollars, which was found dead near the railroad of the appellants, under such circumstances as leave no doubt that she was killed by a car or locomotive engine passing over her ; that the railroad at this point was straight for a half-mile or more, and that the cow could have been readily seen for that distance before she was run over and killed. It was also in proof, that the whistle attached to the engine was heard to sound at or near the place. The place at which the cow was killed was not on lands of the appellee. This was all the proof, and the court rendered judgment against the railroad company, from which they have appealed to this court.

It is here contended, that the judgment is erroneous, for two reasons: 1st, the act of the 10th February, 1852, is in conflict with the rights of the company secured to it by the act of 21st January, 1850, granting the right of way through Jackson county to the Nashville and Chattanooga Railroad Company, and consequently is inoperative and void ; 2d, because the cow which was killed was roaming at large, and was killed on lands which did not belong to her owner.

1. The act of 1850 (Sess. Acts 1849-50, p. 171) which grants the right of way through Jackson county, in this State, to the Nashville and Chattanooga Railroad Company, contains no provision which deprives the Legislature of the power to pass laws in respect to the liability of the company for trespasses committed by its agents on the property of citizens of this State, within its borders, or of prescribing the form of proceeding, and the remedies for such trespasses. That corporation has no greater rights than similar ones created by the Legislature of this State, and exercising their functions solely

within its borders ; and we are not advised that the power to prescribe remedies against such bodies, for the wrongful acts of their agents, has ever been yielded by the State in any charter which it has granted. It is clear that the provisions of the act of the 10th February, 1852, were intended to apply as well to this company as to any of our domestic corporations of the same character, and we can take no distinction between them.

The first section of the act of 1852 provides, " that whenever any live stock, or cattle of any description, shall be killed or injured by the cars or locomotives of any railroad in this State, the corporation owning such railroad shall be liable to pay the owner or owners the value thereof if killed, or the damage thereto if injured." The act then prescribes the form of the remedy against the company, which, it appears, was strictly pursued in this case. Under this act, all that is necessary to make out the case for the plaintiff, is to show property in the stock or cattle killed, their value, and that they were killed by the cars or locomotives of the defendant. If there are any circumstances which tend to show that the killing was the result of accident, which could not have been controlled by the company by the exercise of the greatest degree of diligence and care on the part of their agents, this may be shown in defence ; and if this is not satisfactorily done, the plaintiff is entitled to recover. There is nothing in this bill of exceptions which shows that any care or diligence was used by the agents of the company to prevent the happening of the act which constitutes the trespass complained of. It is true, the bill of exceptions states that the whistle of the engine was heard to sound near the place at which the cow was killed ; but whether at the time of the killing, or at some other, we are wholly uninformed. We apprehend, however, that the mere sounding of the whistle, without more, would not be sufficient to exempt the company from liability for the trespass, under the statute. As to the degree of care and diligence on the part of the company, or whether any will excuse them under the statute, we do not now decide.

2. It is strenuously contended, that as the killing was not done on the premises of the owner, but while the cow was roaming at large on the lands of others, that the company

should not be held liable for the trespass. To sustain this objection, the doctrine of the common law, in respect to trespasses by and upon cattle, is invoked by the counsel for the company. The common law, in this respect, has never been adopted in this State. The laws of Mississippi Territory, which were adopted by the State of Alabama at the formation of our State constitution, contain provisions in direct repugnance to the common law on this subject, and to the extent of this repugnance repealed it.—Toulmin's Digest 723-4, 362. Our present Code contains similar provisions, which show conclusively that the unenclosed lands of this State are to be treated as common pasture for the cattle and stock of every citizen. Upon no other principle can we account for our stray laws, found in sections 1062 and 1063 of the Code, and the stringent laws in relation to trespasses on stock or cattle in sections 1100 and 1101.

In every view we are able to take of this case, we think the conclusion of the court below is correct, and its judgment must be affirmed.