On January 16, 1980, John Scott, accompanied by his wife, Thelma Scott, was driving his automobile on Highway 14 in Autauga County, Alabama, when he struck a cow owned and/or cared for by Ben, E.J., and Glenn Dunn, and Dry Creek Farms. The Scotts brought suit in Circuit Court to recover damages for injuries they suffered as a result of the collision with the cow. The complaint alleged that the defendants were negligent, that they were reckless or wanton in their conduct, and that they failed to secure an animal of known mischievous propensities.
The defendants moved to dismiss the complaint for failure to state a claim upon which relief could be granted, based upon Code 1975, § 3-5-3 (a). The Scotts moved for summary judgment, arguing that § 3-5-3 (a) is unconstitutional. The trial court granted the defendants' motion to dismiss and denied the Scotts' motion for summary judgment.
The Scotts challenged the constitutionality of the statute on the grounds that it violated Ala. Const., art. I, § 13. Section3-5-3 (a) provides:
 "The owner of such livestock or animal being or running at large upon the premises of another or upon the public lands, roads, highways or streets in the state of Alabama shall be liable for all damages done to crops, shade or fruit trees or ornamental shrubs and flowers of any person, to be recovered before any court of competent jurisdiction; provided, that the owner of any stock or animal shall not be liable for any damages to any motor vehicle or any occupant thereof suffered, caused by or resulting from a collision with such stock or other animal, unless it be proven that such owner knowingly or wilfully put or placed such stock upon such public highway, road or street where such damages were occasioned."
Code 1975, § 3-5-3 (a). Section 13 of the Alabama Constitution provides:
 "That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."
Ala. Const. art. I, § 13. For the following reasons we hold that § 3-5-3 (a) does not violate § 13 and we thereby affirm the decision of the trial court.
The thrust of the appellants' contentions for reversal of the trial court is that the Alabama Legislature, by enacting Code 1975, § 3-5-3 (a), has denied a common law remedy to persons traveling upon the highways of this state in contradiction toAla. Const., art. I, § 13. This is simply not the case. The Alabama Legislature has, in fact, given persons who suffer damages on the public roads and highways as a result of livestock thereon a new cause of action that did not exist at common law.
When the Mississippi Territory was settled, the law adopted was that the land would be open territory; that is, a landowner *Page 1342 
was required to fence livestock out to protect his private land. Livestock were permitted to run at large on open land and on the public roads and highways. When Alabama became a state in 1819, it retained, as part of its common law, this same rule adopted in the Mississippi Territory. Nashville ChattanoogaRailroad Co. v. Peacock, 25 Ala. 229 (1854).
In the case of Smith v. Causey, 22 Ala. 568 (1853), this Court stated the law as it stood in Alabama:
 "At [Alabama] common law, where an injury to another arises from carelessness in keeping domestic animals, which are not necessarily inclined to do mischief, such as dogs, horses, c., no recovery can be had against the owner, for an injury done by them, unless it is averred and proved that he knew their vicious propensities, and so carelessly kept them, that injury resulted to the plaintiff therefrom. Burk v. Dyson, 4 Camp. 198; Smith v. Pelah, 2 Strange 1293; Durden v. Barnett Harris, 7 Ala. 169."
22 Ala. at 571. Several years later, Chief Justice Brickell, writing for this Court, said in Mobile Ohio Railroad Co. v.Williams, 53 Ala. 595 (1875):
 "The doctrine of the [English] common law in relation to trespasses by and upon cattle running at large has never been of force in this State. It was never applicable to our situation, and is inconsistent with our estray laws and statutes in reference to trespasses by cattle. These laws treat unenclosed lands as common of pasture, and permit an owner to suffer his cattle to run at large. N. C.R.R. v. Peacock, 25 Ala. 229. The character of inclosures fences is carefully defined. R.C. § 1282. If an animal suffered to go at large trespasses or should do damage on lands not inclosed as required, the owner is exempt from liability therefor; and if the animal is injured, the person inflicting the injury is liable for five fold damages. R.C. § 1283. . . . This legislation is all founded on the theory of the right of an owner to permit his stock to run at large. In the exercise of this right he cannot be molested, and if injury is wantonly or negligently inflicted on his stock, the law entitles him to redress. He has a perfect right to suffer his animals to run at large, and those who would guard themselves from damages in consequence of it must inclose against them. . . ."
53 Ala. at 596-97. This law was reiterated by the Court of Appeals in Means v. Morgan, 2 Ala. App. 547, 56 So. 759 (1911):
 "The [English] common-law rule that animals must be kept on one's premises does not obtain in this state. The rule is, rather, reversed, and animals are permitted to run at large unless prohibited by statute. M. O.R.R. Co. v. Williams, 53 Ala. 595; Hurd v. Lacy, 93 Ala. 427, 9 So. 378, 30 Am.St.Rep. 61.
 "The maxim that one who suffers his animals to run at large takes upon himself the risk incidental thereto applies only where the animals are trespassing on the lands of another, and not to animals running at large in the highway. Colvin v. Sutherland, 32 Mo.App. 77."
2 Ala. App. at 550, 56 So. at 759-60. See also, Rowe v. Baber,93 Ala. 422, 8 So. 865 (1890); Wilhite v. Speakman, 79 Ala. 400
(1885); Alabama Great Southern Railroad Co. v. Jones, 71 Ala. 487
(1882). These cases make it clear that the common law of Alabama, as adopted from the Mississippi Territory, did not allow an action for damages on public roads and highways caused by an animal of normal propensities.
When the Legislature adopted the present "closed state" stock law in 1939 (now found at § 3-5-3 (a)), it also altered the liability of a livestock owner with respect to the public roads and highways. While under Alabama common law a livestock owner had the right to turn livestock out onto the public way, upon passage of Title 3, § 79 (now § 3-5-3 (a)) in 1939, a livestock owner could be liable when he knowingly or willfully put or placed such stock upon the public roads or highways. Therefore, for the first time in Alabama, a person who sustained damages on a public highway could recover against a livestock owner under certain limited conditions. This act created a new right of action, limited though it may be, and did not abolish *Page 1343 
any common law rights, for before the 1939 enactment, persons suffering injury or property damage because of an animal on a public road or highways had no remedy unless the animal was known to have dangerous propensities.
The appellants, however, allege that § 3-5-3 (a) abolishes all common law causes of action against the owners of livestock by the owners or occupants of motor vehicles, except actions based upon proof that the owner knowingly or willfully put or placed such stock upon the public highway. As stated, the 1939 act did not abolish a remedy for a protected right, but, instead, created a right where none had previously existed.
While it has been correctly stated that the common law is constantly changing and that this common law cannot be restricted to its meaning as of the date of statehood, it would be incorrect to hold that the right of action urged by the appellants had somehow become the law at some time in the past, thereby gaining the protection of § 13, when no case law, common law, or legislation has heretofore allowed such a recovery in this state.
To attack § 3-5-3 (a) as unconstitutional under § 13, as do the appellants, one must begin with this Court's decision inGrantham v. Denke, 359 So.2d 785 (Ala. 1978). The cornerstone of Grantham was that § 13 prohibits the Legislature from abolishing a cause of action recognized at common law.
Yet the present case involved a right totally unknown to the common law of Alabama. As stated by Slagle v. Parker,370 So.2d 947 (Ala. 1979), the Legislature may bar or limit actions that were not a part of the common law. That is exactly what the Legislature did when it passed the forerunner of § 3-5-3 (a) in 1939. Since the only prohibition on the legislative power arises when an act abolishes all remedies for a common law or fundamental right, and since it is clear that this action was not recognized at common law in Alabama, then the Legislature was within its power when it enacted § 3-5-3 (a).
The appellants contend that prior to the adoption of § 3-5-3
(a), a person injured by a domestic animal had a cause of action based upon proof that the owner of the animal was guilty of ordinary negligence in caring for that animal. We are compelled to reject this contention based upon our review of several old cases.
One case relied upon by the appellants is Durden v. Barnett Harris, 7 Ala. 169 (1844). While the Durden court did indeed say that an owner of domestic animals is liable where the injury is attributable to some neglect on his part, the appellants overlook the fact that that case had nothing to do with any situation resembling the present one. Durden involved an appeal by the plaintiff after the dismissal of his complaint. He sued for injuries his minor son had received when bitten by "certain hound dogs, from ten to twenty in number." The plaintiff alleged in his complaint that defendant "carelessly and negligently did permit [the dogs] to run at large, well knowing the said hound dogs then were used and accustomed to attack and bite mankind." The Durden court was merely saying that the plaintiff's averments were sufficient to state that the owner had notice of the animals' dangerous propensities. When Justice Goldthwaite wrote in that 1844 case "that the injury was attributable to some neglect on his part," it is obvious he was talking about a neglect in allowing animals with known dangerous propensities to run at large. Justice Goldthwaite was, most certainly, not referring to the right to sue for negligence in allowing a cow (or other animal) to be upon a public way, for no such right had ever existed in Alabama. See, e.g., Nashville Chattanooga Railroad Co. v.Peacock, 25 Ala. 229 (1854).
The appellants further rely upon Hopper v. Crocker,17 Ala. App. 372, 85 So. 843 (1919). This was also a dog bite case wherein the plaintiff alleged that the defendants, knowing that their pet "fice" dog had been bitten by a rabid dog and was likely to develop rabies itself, nevertheless allowed it to run at large. It bit the plaintiff and as a consequence she had to incur "great expense to take the Pasteur treatment, in seeking to be cured of her said injury." This perfectly fits Justice *Page 1344 
Goldthwaite's negligence example. The Hoppers' negligence, for which they were held liable, consisted of letting the dog run loose with knowledge that it had been bitten by a rabid dog and would now be dangerous if allowed to run at large. Thus, the owner knew that there was a present dangerousness by virtue of the bite by a rabid dog. This case says nothing about animals being struck on public ways.
In further support of their contention that the general rules of common law negligence govern damages caused by livestock to an automobile, the appellants cite Pelham v. Spears, 222 Ala. 365,132 So. 886 (1931). They state that the complaint inPelham was dismissed because plaintiff failed to aver that "the cow was of such a nature that the damage done was likely to arise from such an animal and that the owner knew of its propensity" and "the injury must have been foreseeable and must have been proximately caused by the owner's negligence." The appellants contend that this implicitly recognizes a cause of action against the owner of an animal for damage to a motor vehicle based upon ordinary principles of negligence.
The appellants, however, badly misperceive Pelham. It was just a case of a cow hit by a car. Because the appellants recognize that letting livestock run free was not considered negligence, and recognize that the Pelham Court would have required a showing of knowledge of an animal's mischievous propensities, but nevertheless contend that Pelham would have found liability upon proof that the injuries were the proximate result of the owner's action, it becomes clear that the appellants would have us hold that the cow's tendency to get in the road was a "mischievous propensity" which, upon a showing of the owner's knowledge, would have supported a finding of liability. It is, however, obvious that the tendency of a cow to get in a road is not a "mischievous propensity," whether or not the owner knows of the tendency. "Mischievous propensities" of an animal are its tendencies to bite, kick, gore, etc., not its tendencies to walk on a highway. Chief Justice Anderson recognized this in Pelham:
 "The present complaint, while charging negligence, fails to establish a duty owing the plaintiff by the defendant not to permit the cow of the usual and ordinary nature and propensities to be upon the highway." (Emphasis added.)
222 Ala. at 367, 132 So. 886. While the appellants allege that the defendants allowed the animal to roam at large with knowledge of its dangerous propensities, they make no claim that the animal's propensities, whether or not such propensities were dangerous ones, were the proximate cause of their damages. While the bare allegation is made that the defendants knew of the animal's dangerous propensities, if any, it is apparent that the overall issue here is whether § 3-5-3
(a) unconstitutionally bars such a remedy. As stated above, we feel that § 3-5-3 (a) creates new remedies.
Pelham was a suit brought by the plaintiff for damages caused when his automobile struck a cow, which he alleged to be on a public highway through its owner's negligence. The plaintiff attempted to show that the cow's presence on the highway was in violation of a statute. Chief Justice Anderson recognized that in 1928 Alabama laws provided for "stock law districts." Section 10207, Code of 1923, authorized county commissioners to supervise elections "for establishing stock law districts in their respective counties." These districts were contrary to the general state law and in them it was forbidden to permit stock to run at large. Section 10215 provided for a penalty against the owner of livestock whose livestock caused damage "on the premises of another" within the "stock law district."
Chief Justice Anderson wrote in Pelham that the Court considered plaintiff's allegation that the cow was on the road "contra formam statuti" to mean "in violation of the stock law." Even with this assumption, however, he wrote that even if the act alleged occurred within a stock law district, the complaint "shows upon its face that the cow was not unlawfully upon the highway." The stock law, he stated, would have made it unlawful to permit stock to go upon the premises of another, but would not have *Page 1345 
made it unlawful for the stock to be upon the highway, because:
 "The common-law rule that animals must be on owner's own premises does not obtain in this state. The rule is rather reversed and animals are permitted to run at large unless prohibited by statute. Means v. Morgan, 2 Ala. App. 547, 56 So. 759; M. O. R.R. v. Williams, 53 Ala. 595; Hurd v. Lacy, 93 Ala. 427, 9 So. 378, 30 Am.St.Rep. 61."
Pelham v. Spears, 222 Ala. at 366, 132 So. 886. In Pelham, the cow's running at large violated no statute. Thus the cow was legally upon a public road and since its presence was legal, there could be liability only if the defendant-owner knew of "such propensities as would probably result in the injuries charged." Then, Chief Justice Anderson added:
 "Even if the owner negligently permitted the cow to be on the highway, as charged in the complaint, the said negligence must have been connected with the damage and it should be averred and proved that the cow was of such a nature that the damage done was likely to arise from such an animal and the owner knew of its propensity." (Emphasis added.)
222 Ala. at 367, 132 So. 886. In other words, (1) the general English common law rule that animals had to stay on their owner's land has never been law in Alabama; (2) even if there had been proven a stock law district, it would not have been unlawful for the cow to be on the highway; and (3) even if the owner was negligent in letting the cow on the public road or highway, for that negligence to result in liability, it had to be shown that the cow's nature made it likely to do damage if it got on a public road. There was no liability when a cow "ofthe usual and ordinary propensities" was allowed to be upon thehighway and an automobile ran into it. There could, however, beliability if the cow was known to gore passersby or to chargemotor vehicles and was allowed to go upon the highway and dojust that.
A reading of Pelham v. Spears shows that no action existed in Alabama against an owner who allowed his cow to be upon a public highway and shows that the appellants are incorrect when they allege that at common law, the driver of a vehicle, a passenger, or the owner of the vehicle had a cause of action for injuries caused by livestock if the acts of the animal's owner proximately caused the injury. Pelham reaches exactly the opposite result insofar as it relates to automobile collisions.
The appellants also allege that § 3-5-3 (a) abolishes all remedies for damages caused by a known mischievous animal or by the owner's negligence or at least leaves a remedy barely worth pursuing, thereby violating § 13 of the constitution by abolishing a common law right. Yet § 3-5-3 (a) makes no reference to damages caused by a "known mischievous animal." Prior to the adoption of that statutory provision in 1939, an owner was liable only for his negligence which allowed damages to occur because of an animal's "mischievous tendencies" or "mischievous propensities," Pelham v. Spears, 222 Ala. 365,132 So. 886 (1931), and § 3-5-3 (a) in no way attempts to restrict that long recognized right. The 1939 statute for the first timeextended to a wronged party a right to recover when a negligently loosed animal destroyed or damaged "crops, shade or fruit trees or ornamental shrubs and flowers." These are not damages done by "mischievous" or "dangerous" animals — they are damages done by ordinary animals as they walk and eat. Section 3-5-3 (a) does not deal with damages or injuries caused by "mischievous" or "dangerous" animals. Persons injured by a negligently loosed animal of dangerous propensities still have the same common law remedy that has always existed under Alabama common law. The appellants err in saying that § 3-5-3
(a) abolishes such a right. Furthermore, as stated, no other remedy for damages done to automobiles by negligently loosed animals of ordinary propensities ever existed at common law for § 3-5-3 (a) to abolish.
Justice Maddox succinctly explained the effect of § 3-5-3 (a) in Chandler v. Waugh, 290 Ala. 70, 274 So.2d 46 (1973), when he stated: *Page 1346 
 "We think the legislature, in adopting the proviso in § 79 [now § 3-5-3 (a)], intended to make the owner or keeper of stock . . . liable for damages in motor vehicle accidents caused by livestock only where the owner or keeper knowingly or willfully placed or put the livestock on the highway, road, or street."
290 Ala. at 74, 274 So.2d 46.
The appellants erroneously conclude that § 3-5-3 (a) imposes such a low standard of care as to impose no standard at all, and that as a result, it abolishes an automobile owner's or driver's common law remedy for negligence. The 1939 statute actually created new rights that had not existed since the advent of statehood on December 14, 1819. This was well recognized by Judge Harwood when he wrote Randle v. Payne,39 Ala. App. 652, 107 So.2d 907 (1958), in which he stated:
 "Counsel for appellant asserts that Section 79, supra [§ 3-5-3 (a), Code 1975], is violative of Section 13 of the Alabama Constitution which provides `That every person, for an injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law.'
 "The injury mentioned in Section 13, supra, is damage resulting from breach of a legal duty. Whatever damage results from doing that which is lawful does not lay the foundation of an action. Pickett v. Matthews, 238 Ala. 542, 192 So. 261.
 "Prior to the 1939 Act, supra, it was lawful for one to suffer stock to run at large upon a public highway. Crittenden v. Speake, 240 Ala. 133, 198 So. 137.
 "It became unlawful so to do by the 1939 Act. At the same time that the legislature created this new legal duty it also provided a remedy imposing liability for its breach. This remedy, in case of injury to motor vehicles, was limited to those cases where the owner knowingly or wilfully placed stock on the highway. These limitations placed on the liability thus created became a part of the right created. See, 1 Am.Jur., Actions, Sec. 11. Having the power to create a new legal duty, necessarily the legislature had a right to limit the liability for breach of such duty."
39 Ala. App. at 656-57, 107 So.2d 907. We believe Judge Harwood was correct. The statute in question did not limit or destroy rights, but created them. The Legislature, in the creation of a new right, is certainly not prohibited by § 13 of the Constitution from restricting that newly created right. Since we do not find that § 3-5-3 (a) abolishes a common law right, but instead created a new cause of action unknown at common law in Alabama, the decision of the trial court to dismiss the complaint for failure to state a claim upon which relief could be granted is due to be affirmed.
AFFIRMED.
MADDOX and BEATTY, JJ., concur.
SHORES, ALMON and BEATTY, JJ., concur specially.
FAULKNER, JONES, EMBRY and ADAMS, JJ., dissent.