Rel: May 24, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0151
_____

**Veronica Edwards, individually and as the personal representative of the Estate of Corey Demills Hatcher, Jr., deceased, and Corey D. Hatcher, Sr.**

**v.**

**Kimberly Johnson Crowder; David Lyons; Carole A. Phillipsen; Southern Sportsman Hunting Lodge, Inc.; Edward S. McCurdy, Jr.; Jim Mason; and McCurdy Plantation Horse Association**

**Appeal from Lowndes Circuit Court**
**(CV-22-900016)**

MENDHEIM, Justice.[1]

Corey Demills Hatcher, Jr. ("Corey"), died as a result of injuries he incurred when a vehicle he was driving collided with horses that were on the road he was traversing, U.S. Highway 80. Veronica Edwards, individually and as the personal representative of Corey's estate, and Corey D. Hatcher, Sr. ("the plaintiffs"), commenced in the Lowndes Circuit Court ("the circuit court") a wrongful-death action[2] against Southern Sportsman Hunting Lodge, Inc. ("Southern Sportsman"); Jim Mason; David Lyons; McCurdy Plantation Horse Association ("the Association"); Edward S. McCurdy, Jr.; Kimberly Johnson Crowder; and Carole A. Phillipsen ("the defendants"). The circuit court entered a summary judgment in favor of the defendants, and the plaintiffs appealed. We affirm the circuit court's judgment.

Facts and Procedural History

---

[1]This case was originally assigned to another Justice on this Court; it was reassigned to Justice Mendheim on February 28, 2024.

[2]A wrongful-death action may be commenced by the personal representative of a decedent's estate. See § 6-5-410, Ala. Code 1975. It appears that Veronica Edwards and Corey D. Hatcher, Sr., in their individual capacities, lacked the capacity to bring this wrongful-death action; however, based on our resolution of this appeal, it is not necessary to address that issue.

2

Most of the material facts appear to be undisputed. Southern Sportsman is owned by Lyons and Mason. Southern Sportsman owns property in Lowndes County, at which, according to the affidavit of Mason, it "offers outdoor recreational activities and lodging ...." On October 30, 2021, Southern Sportsman allowed the Association to host a trail ride on Southern Sportsman's property. McCurdy is the director of the Association.

Crowder and Phillipsen participated in the trail ride that occurred on October 30, 2021. On October 29, 2021, the day before the trail ride, Crowder and Phillipsen trailered horses they owned to Southern Sportsman's property; Crowder brought two horses, and Phillipsen brought one horse. Crowder and Phillipsen set up an electric fence in which to corral their horses while they were not being used for the trail ride. Crowder's affidavit indicates that "[t]he fence ... contained 4 hot and/or electrically charged wires that were fastened to posts. The fenced area was approximately 30 to 40 feet long and approximately 25 feet wide." Crowder's affidavit further indicates that the electric fence was working properly after it was set up and that the horses "remained in the fencing and there were no problems with the horses or fencing on the

3

night of October 29, 2021." Additionally, Crowder's affidavit indicates that she had "been using this same fence and charging unit for approximately 4 years" before October 30, 2021, and that "[a]t no time prior … [had her] horses ever gotten out of this fencing." It is undisputed that no other party in this action had anything to do with the electric fence.

On October 30, 2021, Crowder and Phillipsen took their horses on the trail ride hosted by the Association. Crowder's and Phillipsen's affidavits indicate that, after the trail ride was complete, they placed their horses back in the electric fence at approximately 8:30 p.m., that the electric fence was working properly at that time, and that Crowder and Phillipsen went to bed. At approximately 10:00 p.m. that evening, according to her affidavit, Crowder received a telephone call from the Lowndes County Fire Marshal "advising [her] that [her] horses were on U.S. Highway 80," which bordered Southern Sportsman's property. Crowder's affidavit indicates that, upon receiving the call from the fire marshal, she "immediately went to U.S. Highway 80 and saw that two horses had been hit by vehicles. One of those horses was a white horse owned by [Crowder]." Crowder's affidavit further indicates that, "[p]rior

4

to receiving [the] telephone call, [she] did not have any knowledge that [her] horse or horses had gotten out of the fencing" and that "[a]t no time … did [she] knowingly or willfully put or place [her] horse or horses upon or in U.S. Highway 80 …." The other horse that had been hit by a vehicle was owned by Phillipsen. Phillipsen's affidavit indicates that she "did not have any knowledge or reason to believe that [her] horse had gotten out of the electric fence" and that she "did not knowingly or willfully put or place [her] horse … upon or in the roadway of U.S. Highway 80 …."

According to the complaint filed by the plaintiffs, on October 30, 2021, Corey was driving his vehicle on U.S. Highway 80 when his vehicle collided with Crowder's horse and Phillipsen's horse. Corey died as a result of the injuries he incurred in the collision.

On March 21, 2022, the plaintiffs commenced a wrongful-death action against the defendants. The plaintiffs alleged that the defendants had not used the kind of fencing allegedly required by § 3-4-1, Ala. Code 1975, to corral the horses and, based on that alleged failure by the defendants, asserted that the defendants were liable premised on theories of negligence per se, nuisance, and wantonness. The plaintiffs

also attached to their complaint documentary evidence in support of their allegations.

On April 21, 2022, Southern Sportsman, Mason, and Lyons filed a motion to dismiss or, in the alternative, for a summary judgment. Southern Sportsman, Mason, and Lyons argued that the plaintiffs' claims against them were due to be dismissed because, they argued, "under Alabama law, all claims for damages for injury or harm directly caused by a collision with livestock on a road are limited to only the remedy allowed under Ala. Code 1975, § 3-5-3(a)." Section 3-5-3(a), Ala. Code 1975, provides:

> "(a) The owner of such livestock or animal being or running at large upon the premises of another or upon the public lands, roads, highways or streets in the State of Alabama shall be liable for all damages done to crops, shade or fruit trees or ornamental shrubs and flowers of any person, to be recovered before any court of competent jurisdiction; provided, that the owner of any stock or animal shall not be liable for any damages to any motor vehicle or any occupant thereof suffered, caused by or resulting from a collision with such stock or other animal, unless it be proven that such owner knowingly or wilfully put or placed such stock upon such public highway, road or street where such damages were occasioned."

(Emphasis added.) Southern Sportsman, Mason, and Lyons made extensive arguments relying upon precedent interpreting and applying §

6

3-5-3(a), which will be discussed in greater detail below. In summary, Southern Sportsman, Mason, and Lyons argued that § 3-5-3(a) provides the exclusive remedy to the plaintiffs and that that section provides a remedy against only the owners of the livestock. Because Southern Sportsman, Mason, and Lyons are undisputedly not the owners of the horses that were involved in the collision, they argued, the plaintiffs' "complaint fails to state a claim upon which relief can be granted and is due to be dismissed pursuant to Ala. R. Civ. P., Rule 12(b)(6)." Alternatively, Southern Sportsman, Mason, and Lyons argued that, if the circuit court "considers matters outside of the pleadings, [they] are entitled to [a] summary judgment ...." In support of their motion, Southern Sportsman, Mason, and Lyons included the affidavits of Mason and Lyons.

On May 17, 2022, the plaintiffs filed a response. Among other things, the plaintiffs argued that § 3-5-3 applies only to the owners of the horses, Crowder and Phillipsen, and that it has no application to their claims against Southern Sportsman, Mason, and Lyons. The plaintiffs argued that § 3-5-3 does not provide an exclusive remedy and that they are permitted to proceed against Southern Sportsman, Mason, and Lyons

7

on their theories of negligence per se, nuisance, and wantonness. The plaintiffs also argued that, even if § 3-5-3 does apply to Southern Sportsman, Mason, and Lyons, they had alleged sufficient facts to survive the motion to dismiss.

On May 27, 2022, the Association and McCurdy also filed a motion to dismiss or, in the alternative, for a summary judgment, asserting essentially the same arguments as those asserted by Southern Sportsman, Mason, and Lyons. Additionally, the Association and McCurdy argued that the plaintiffs' wrongful-death claim was the only claim that could be asserted because Corey died in the collision. The Association and McCurdy stated that, "if the court considers matters outside of the pleadings, the [Association and McCurdy] are entitled to summary judgment as a matter of law ...." They also supported their motion with the affidavit of McCurdy. On June 30, 2022, the plaintiffs filed a response.

On June 29, 2022, Crowder filed a motion to dismiss or, in the alternative, for a summary judgment. Crowder argued, as Southern Sportsman, Mason, Lyons, the Association, and McCurdy had, that the only cause of action available to the plaintiffs is a wrongful-death claim

8

based on § 3-5-3. Accordingly, Crowder argued that the plaintiffs' claims of negligence per se, nuisance, and wantonness must be dismissed. Concerning the plaintiffs' wrongful-death claim, Crowder stated that it is undisputed that she had owned one of the horses involved in the collision, but she argued that "there is absolutely no evidence before the [circuit c]ourt that Crowder at any time and specifically on the day in question ever knowingly or willfully put or placed her horse or horses upon Highway 80." As a result, Crowder argued that the plaintiffs' wrongful-death claim is "due to be dismissed." Alternatively, Crowder argued that, if the circuit court "considers matters outside of the pleadings, [Crowder] is entitled to summary judgment as a matter of law as Plaintiffs' claims are due to be [disposed of] pursuant to Rule 56 of the Alabama Rules of Civil Procedure." Crowder supported her motion with her own affidavit.

On July 13, 2022, Phillipsen filed a motion to dismiss or, in the alternative, for a summary judgment. Like Crowder, Phillipsen argued that the plaintiffs'

> "claims against [Phillipsen] fail because [the p]laintiffs have
> failed to plead facts which would entitle them to relief under
> Alabama Code [1975,] § 3-5-3(a). Because the defect is obvious
> on the face of the complaint, dismissal under [Ala. R. Civ. P.]

9

Rule 12(b)(6) is appropriate. Alternately, if the court considers materials outside of the pleadings, [Phillipsen] is entitled to summary judgment because it is undisputed that [Phillipsen] did not knowingly or willfully place her horse upon or in U.S. Highway 80 on the night of October 30, 2021. Thus, there is no genuine issue of material fact and summary judgment is due to be granted."

Phillipsen supported her motion with her own affidavit.

On October 18, 2022, the plaintiffs filed a response to Crowder's and Phillipsen's motions, arguing, among other things, that they had "sufficiently alleged" that Crowder and Phillipsen had knowingly placed their horses on the roadway where the accident occurred.

On November 21, 2022, the circuit court set the defendants' motions for a hearing to occur on February 2, 2023. On February 2, 2023, the circuit court held a hearing on the defendants' various motions to dismiss or, in the alternative, for a summary judgment. At the hearing, the plaintiffs' trial attorney made extensive arguments under the summary-judgment standard, arguing that the defendants had not demonstrated that the plaintiffs had not presented substantial evidence creating a genuine issue of material fact.[3]

_____

[3]The plaintiffs' trial attorney, who was admitted pro hac vice from California, actually presented argument under the old scintilla-of-evidence standard, rather than the substantial-evidence standard. Of

On February 8, 2023, the circuit court entered the following

judgment, which states, in pertinent part:

"In filing their motions for summary judgment, the defendants cite [§] 3-5-3(a)[, Ala. Code 1975),] which states, '... [p]rovided, that the owner of any stock or animal shall not be liable for any damages to any motor vehicle or any occupant thereof suffered, caused by or resulting from a collision with such stock or other animal, unless it … be proven that such owner knowingly or [wilfully] put or place[d] such sto[c]k upon such public highway, road or street where such damages were occasioned.' The defendants cite Brewer v Atkinson, 262 So. 3d 663 [(Ala. Civ. App. 2018),] to support their contentions.

"The plaintiffs argue that the fence used failed to meet the fencing standards cited in [§] 3-4-1 et [s]eq[., Ala. Code 1975,] that [Crowder and Phillipsen] were negligent or wanton in failing to properly fence the horses, that [Southern Sportsman] had an obligation that [it] breached in corralling the horses, as did [the Association and] McCurdy. The plaintiff[s] further argue[] that the Brewer case and [§] 3-5-3(a) only appl[y] to the owners of the livestock[, Crowder and Phillipsen,] and shouldn't apply to [the Association,] McCurdy[,] or [Southern Sportsman].

"The Brewer case is the most recent case involving [§] 3-5-3 and is closely related in the fact situations covered in this case. Based on the Brewer case, it is clear that [§] 3-5-3 would apply to all of the named defendants in this case and would

---

course, the scintilla rule was abolished long ago.  See Furrow v. Helton, 13 So. 3d 350, 359 n.6 (Ala. 2008)("Effective June 11, 1987, the scintilla rule was abolished in favor of the substantial-evidence rule. See § 12-21-12, Ala. Code 1975.").  Regardless, the plaintiffs' trial attorney understood the defendants' motions to be ones requesting a summary judgment.

absolve them from liability absent a showing of intentionality, which is absent in this case.

"The motions for summary judgment are hereby GRANTED on all counts of the complaint, and this case is therefore DISMISSED."

(Capitalization in original.)  The plaintiffs appealed.

Standard of Review

The circuit court made clear in its judgment that it was entering a summary judgment in favor of the defendants; the circuit court did not dismiss the plaintiffs' complaint under Rule 12(b)(6), Ala. R. Civ. P.  This Court set forth the following applicable standard of review in Nesbitt v. Frederick, 941 So. 2d 950, 955 (Ala. 2006):

"The standard of review for the grant or denial of a summary-judgment motion is as follows:

"'"We review this case de novo, applying the oft-stated principles governing appellate review of a trial court's grant or denial of a summary judgment motion:

"'"'We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material facts exists, the burden shifts to the nonmovant to present

12

substantial evidence creating a genuine issue of material fact. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.'"

"'American Liberty Ins. Co. v. AmSouth Bank, 825 So. 2d 786, 790 (Ala. 2002) (quoting Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So. 2d 369, 372 (Ala. 2000) (citations omitted)).'

"General Motors Corp. v. Kilgore, 853 So. 2d 171, 173 (Ala. 2002)."

## Discussion

The plaintiffs' first argue that the circuit court committed various procedural errors related to its decision to treat the defendants' motions as motions requesting a summary judgment, instead of as motions to dismiss. None of the plaintiffs' procedural arguments, however, were presented to the circuit court. "This Court cannot consider arguments advanced for the purpose of reversing the judgment of a trial court when those arguments were never presented to the trial court …." State Farm

13

Mut. Auto. Ins. Co. v. Motley, 909 So. 2d 806, 821 (Ala. 2005). When a postjudgment motion is the only mechanism for bringing an alleged error to the circuit court's attention, which is the case here, the alleged error must be raised in a postjudgment motion. Lay v. Destafino, [Ms. 1210383, Feb. 17, 2023] ___ So. 3d ___, ___ (Ala. 2023) ("While it is true that postjudgment motions under Rule 59(e)[, Ala. R. Civ. P.,] are usually elective rather than mandatory, such a motion is necessary to preserve an objection for appellate review when -- as here -- that motion is the only possible mechanism for bringing the alleged error to the trial court's attention."). The plaintiffs did not file a postjudgment motion, thereby failing to preserve their procedural arguments for appellate review. Accordingly, we need not consider those arguments any further.

Having determined that the plaintiffs' procedural arguments have not been preserved for appellate review, we now turn to the plaintiffs' substantive arguments on appeal. As set forth above, the circuit court determined that § 3-5-3 applies "to all of the named defendants in this case and … absolve[s] them from liability absent a showing of intentionality, which is absent in this case." It appears that the circuit court's judgment is premised upon a determination that the plaintiffs

were able to assert a wrongful-death claim based on § 3-5-3 against all the defendants, but that the plaintiffs failed to produce substantial evidence creating a genuine issue of material fact as to whether the defendants "knowingly or wilfully put or placed [the horses involved in the collision] upon [U.S. Highway 80] where such damages were occasioned." § 3-5-3(a). Based on the fact that the circuit court provided no analysis of the plaintiffs' other theories of liability (negligence per se, nuisance, or wantonness), it appears that the circuit court determined that the plaintiffs' wrongful-death claim based on § 3-5-3(a) was the exclusive remedy available to the plaintiffs and that the plaintiffs failed to provide substantial evidence to support that claim.[4]

---

[4]It is worth noting at this point that the plaintiffs' complaint does not assert a claim under § 3-5-3(a). The plaintiffs' complaint does assert a wrongful-death claim that is premised upon the plaintiffs' allegation that the defendants "negligently, carelessly, recklessly, wantonly, and unlawfully operated and supervised the horses so as to directly and proximately cause death to [the] decedent." That claim does not, however, assert that the defendants "knowingly or wilfully put or placed [the horses involved in the collision] upon [U.S. Highway 80] where such damages were occasioned." § 3-5-3(a). Further, the plaintiffs' complaint does not allege facts indicating that the defendants "knowingly or wilfully put or placed [the horses involved in the collision] upon [U.S. Highway 80] where such damages were occasioned." § 3-5-3(a). In fact, Southern Sportsman's trial attorney noted that deficiency in the plaintiffs' complaint at the February 8, 2023, hearing before the circuit court, arguing that § 3-5-3(a)

On appeal, the plaintiffs do not dispute that § 3-5-3(a) creates a cause of action as to Crowder and Phillipsen as the owners of the horses involved in the collision, but the plaintiffs argue that the circuit court erred in determining that § 3-5-3(a) applies to Southern Sportsman, Mason, Lyons, the Association, and McCurdy, who, undisputedly, did not own the horses involved in the collision. It is clear that the plaintiffs interpret § 3-5-3(a) as a statute passed by the legislature to shield livestock owners from liability, not as a statute that creates a cause of action that did not previously exist. With that understanding of § 3-5-

---

"requires knowing or willful conduct on the part of a livestock owner or keeper. That requires proof that the owner or keeper had a design and purpose to inflict an injury. That's what's required. So not only are the pleadings deficient, negligence, wantonness, nuisance, none of that pleads knowing or willful conduct on the part of any of these Defendants. So the pleadings themselves are deficient."

Regardless, it appears that the complaint was amended by consent, given that the parties presented extensive arguments concerning § 3-5-3(a) before the circuit court, both in writing and orally at the hearing. See Rule 15(b), Ala. R. Civ. P. ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). Moreover, the defendants have not raised any objection to the circuit court's apparent implied conclusion that the plaintiffs based their wrongful-death claim upon § 3-5-3(a).

3(a), the plaintiffs make extensive arguments to demonstrate that Southern Sportsman, Mason, Lyons, the Association, and McCurdy are not entitled to the "protections" of § 3-5-3(a). Under the plaintiffs' theory, if they can demonstrate that Southern Sportsman, Mason, Lyons, the Association, and McCurdy are not entitled to the "protections" of § 3-5-3(a), then they can pursue a wrongful-death cause of action based on different theories of liability (i.e., negligence per se, nuisance, and wantonness) against Southern Sportsman, Mason, Lyons, the Association, and McCurdy. See the plaintiffs' brief at 40-44. In other words, the plaintiffs believe that § 3-5-3(a) operates to shield the owners of livestock involved in a collision with an automobile from liability that would otherwise exist under the common law, instead of creating a cause of action that otherwise did not exist under the common law. The plaintiffs are incorrect in their fundamental understanding of § 3-5-3(a).

As set forth above, § 3-5-3(a) provides:

"The owner of such livestock or animal being or running at large upon the premises of another or upon the public lands, roads, highways or streets in the State of Alabama shall be liable for all damages done to crops, shade or fruit trees or ornamental shrubs and flowers of any person, to be recovered before any court of competent jurisdiction; provided, that the owner of any stock or animal shall not be liable for any damages to any motor vehicle or any occupant thereof

17

suffered, caused by or resulting from a collision with such stock or other animal, unless it be proven that such owner knowingly or wilfully put or placed such stock upon such public highway, road or street where such damages were occasioned."

In Scott v. Dunn, 419 So. 2d 1340, 1341 (Ala. 1982), this Court stated that, in adopting § 3-5-3(a), "[t]he Alabama Legislature has, in fact, given persons who suffer damages on the public roads and highways as a result of livestock thereon a new cause of action that did not exist at common law." (Emphasis added.) In explaining that determination, this Court provided the following history of Alabama's common law and the adoption and purpose of § 3-5-3:

> "When the Mississippi Territory was settled, the law adopted was that the land would be open territory; that is, a landowner was required to fence livestock out to protect his private land. Livestock were permitted to run at large on open land and on the public roads and highways. When Alabama became a state in 1819, it retained, as part of its common law, this same rule adopted in the Mississippi Territory. Nashville & Chattanooga Railroad Co. v. Peacock, 25 Ala. 229 (1854).
>
> "In the case of Smith v. Causey, 22 Ala. 568 (1853), this Court stated the law as it stood in Alabama:
>
>> "'At [Alabama] common law, where an injury to another arises from carelessness in keeping domestic animals, which are not necessarily inclined to do mischief, such as dogs, horses, &c., no recovery can be had against the owner, for an injury done by them, unless it is averred and

18

proved that he knew their vicious propensities, and so carelessly kept them, that injury resulted to the plaintiff therefrom. Burk v. Dyson, 4 Camp. 198; Smith v. Pelah, 2 Strange 1293; Durden v. Barnett & Harris, 7 Ala. 169 [(1844)].'

"22 Ala. at 571. Several years later, Chief Justice Brickell, writing for this Court, said in Mobile & Ohio Railroad Co. v. Williams, 53 Ala. 595 (1875):

"'The doctrine of the [English] common law in relation to trespasses by and upon cattle running at large has never been of force in this State. It was never applicable to our situation, and is inconsistent with our estray laws and statutes in reference to trespasses by cattle. These laws treat unenclosed lands as common of pasture, and permit an owner to suffer his cattle to run at large. N. & C. R.R. v. Peacock, 25 Ala. 229 [(1854)]. The character of inclosures & fences is carefully defined. R.C. § 1282. If an animal suffered to go at large trespasses or should do damage on lands not inclosed as required, the owner is exempt from liability therefor; and if the animal is injured, the person inflicting the injury is liable for five fold damages. R.C. § 1283.... This legislation is all founded on the theory of the right of an owner to permit his stock to run at large. In the exercise of this right he cannot be molested, and if injury is wantonly or negligently inflicted on his stock, the law entitles him to redress. He has a perfect right to suffer his animals to run at large, and those who would guard themselves from damages in consequence of it must inclose against them....'

"53 Ala. at 596-97. This law was reiterated by the Court of Appeals in Means v. Morgan, 2 Ala. App. 547, 56 So. 759 (1911):

19

"'The [English] common-law rule that animals must be kept on one's premises does not obtain in this state. The rule is, rather, reversed, and animals are permitted to run at large unless prohibited by statute. M. & O. R.R. Co. v. Williams, 53 Ala. 595 [(1875)]; Hurd v. Lacy, 93 Ala. 427, 9 South. 378, 30 Am. St. Rep. 61 [(1891)].

"'The maxim that one who suffers his animals to run at large takes upon himself the risk incidental thereto applies only where the animals are trespassing on the lands of another, and not to animals running at large in the highway. Colvin v. Sutherland, 32 Mo. App. 77 [(1888)].'

"2 Ala. App. at 550, 56 So. at 759-60. See also, Rowe v. Baber, 93 Ala. 422, 8 So. 865 (1890); Wilhite v. Speakman, 79 Ala. 400 (1885); Alabama Great Southern Railroad Co. v. Jones, 71 Ala. 487 (1882). These cases make it clear that the common law of Alabama, as adopted from the Mississippi Territory, did not allow an action for damages on public roads and highways caused by an animal of normal propensities.

"When the Legislature adopted the present 'closed state' stock law in 1939 (now found at § 3-5-3(a)), it also altered the liability of a livestock owner with respect to the public roads and highways. While under Alabama common law a livestock owner had the right to turn livestock out onto the public way, upon passage of Title 3, § 79 (now § 3-5-3(a)) in 1939, a livestock owner could be liable when he knowingly or willfully put or placed such stock upon the public roads or highways. Therefore, for the first time in Alabama, a person who sustained damages on a public highway could recover against a livestock owner under certain limited conditions. This act created a new right of action, limited though it may be, and did not abolish any common law rights, for before the 1939 enactment, persons suffering injury or property damage

20

because of an animal on a public road or highways had no remedy unless the animal was known to have dangerous propensities.

"The appellants, however, allege that § 3-5-3(a) abolishes all common law causes of action against the owners of livestock by the owners or occupants of motor vehicles, except actions based upon proof that the owner knowingly or willfully put or placed such stock upon the public highway. As stated, the 1939 act did not abolish a remedy for a protected right, but, instead, created a right where none had previously existed.

"....

"... The 1939 statute actually created new rights that had not existed since the advent of statehood on December 14, 1819. This was well recognized by Judge Harwood when he wrote Randle v. Payne, 39 Ala. App. 652, 107 So. 2d 907 (1958), in which he stated:

"'Counsel for appellant asserts that Section 79, supra [§ 3-5-3(a), Code 1975], is violative of Section 13 of the Alabama Constitution which provides "That every person, for an injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law."

"'The injury mentioned in Section 13, supra, is damage resulting from breach of a legal duty. Whatever damage results from doing that which is lawful does not lay the foundation of an action. Pickett v. Matthews, 238 Ala. 542, 192 So. 261 [(1939)].

"'Prior to the 1939 Act, supra, it was lawful for one to suffer stock to run at large upon a public

21

highway. <u>Crittenden v. Speake</u>, 240 Ala. 133, 198 So. 137 [(1940)].

"'It became unlawful so to do by the 1939 Act. At the same time that the legislature created this new legal duty it also provided a remedy imposing liability for its breach. This remedy, in case of injury to motor vehicles, was limited to those cases where the owner knowingly or wilfully placed stock on the highway. These limitations placed on the liability thus created became a part of the right created. See, 1 Am. Jur., Actions, Sec. 11. Having the power to create a new legal duty, necessarily the legislature had a right to limit the liability for breach of such duty.'

"39 Ala. App. at 656-57, 107 So. 2d 907. We believe Judge Harwood was correct. <u>The statute in question did not limit or destroy rights, but created them</u>."

<u>Scott</u>, 419 So. 2d at 1341-46 (some emphasis added).

It is clear from the above-quoted portion of <u>Scott</u> that the legislature, in passing § 3-5-3(a), created a cause of action that did not exist at common law and, in so doing, "restrict[ed] that newly created right." <u>Scott</u>, 419 So. 2d at 1346. In other words, in a situation such as the one presented in the present case, the exclusive remedy available to someone who has incurred injuries as a result of a car accident involving livestock is found in § 3-5-3(a); there is no common-law cause of action

22

available. The purpose of § 3-5-3(a) is not to shield from liability, but to create a cause of action where one did not previously exist.

That is exactly the opposite of how the plaintiffs have interpreted § 3-5-3(a). As stated above, the plaintiffs wrongly believe that § 3-5-3(a) is a statute designed to shield certain defendants from liability rather than to create a cause of action. The plaintiffs believe that if § 3-5-3(a) applies to Southern Sportsman, Mason, Lyons, the Association, and McCurdy, then those defendants will be shielded from liability; that is why the plaintiffs challenge on appeal the circuit court's conclusion that § 3-5-3(a) applies to Southern Sportsman, Mason, Lyons, the Association, and McCurdy. In reality, however, the circuit court's conclusion that § 3-5-3(a) applies to Southern Sportsman, Mason, Lyons, the Association, and McCurdy was a determination in the plaintiffs' favor and allowed them to pursue their wrongful-death cause of action based on § 3-5-3(a) against those defendants. Had the circuit court determined otherwise, then the plaintiffs could not have pursued any cause of action against Southern Sportsman, Mason, Lyons, the Association, or McCurdy because one did not exist at common law.

Based on the plaintiffs' misunderstanding of the nature of § 3-5-3(a), they make extensive arguments before this Court in an effort to convince us that the circuit court erred in determining that § 3-5-3(a) applies to Southern Sportsman, Mason, Lyons, the Association, and McCurdy. In so arguing, the plaintiffs discuss some of this Court's precedent in which this Court has interpreted the term "owner" of livestock used in § 3-5-3(a) to include a "keeper" of livestock. See the plaintiffs' brief at 22-33 (discussing, among other things, the plaintiffs' desire for this Court to revisit Chandler v. Waugh, 290 Ala. 70, 274 So. 2d 46 (1973), in which this Court interpreted § 3-5-3(a) to include "keepers" of livestock in addition to "owners" of livestock). However, even if there is some merit to the plaintiffs' argument that this Court has improperly expanded the term "owner" to include a "keeper" of livestock, we need not delve into that issue because, assuming the plaintiffs are correct, their own argument demonstrates that the circuit court's judgment in favor of Southern Sportsman, Mason, Lyons, the Association, and McCurdy should be affirmed. If we agree with the plaintiffs that § 3-5-3(a) does not apply to Southern Sportsman, Mason, Lyons, the Association, or McCurdy, then we must conclude that the

24

plaintiffs cannot pursue a wrongful-death cause of action based on § 3-5-3(a) against those defendants. As a result, the plaintiffs would have no other cause of action to pursue against Southern Sportsman, Mason, Lyons, the Association, or McCurdy because § 3-5-3(a) provides the exclusive remedy available to the plaintiffs in this case.[5] Assuming the plaintiffs are correct, their argument does not demonstrate that the circuit court erred in entering a summary judgment in favor of Southern Sportsman, Mason, Lyons, the Association, and McCurdy; it, instead, demonstrates that the circuit court's judgment should be affirmed, even if for reasons other than those relied upon by the circuit court. See Smith v. Mark Dodge, Inc., 934 So. 2d 375, 380 (Ala. 2006)(plurality opinion)("[T]his Court will affirm a judgment for any reason supported by the record that satisfies the requirements of due process, Taylor v. Stevenson, 820 So. 2d 810, 814 (Ala. 2001), even where the ground upon

_____

[5]In their reply brief, the plaintiffs argue for the first time that, even if § 3-5-3(a) is construed as a statute that creates a cause of action, this Court should follow Justice Faulkner's dissent in Scott, supra, and conclude that a cause of action did exist at common law for a situation such as the one presented here. See the plaintiffs' reply brief at 12-14. However, we will not consider arguments raised for the first time in a reply brief. See Sverdrup Tech., Inc. v. Robinson, 36 So. 3d 34, 46-47 (Ala. 2009). This argument is not properly before us and, thus, is not persuasive.

which we affirm was not argued before the trial court or this Court. Ex parte CTB, Inc., 782 So. 2d 188, 191 (Ala. 2000).").

In summary, the circuit court determined that the plaintiffs were able to pursue a wrongful-death claim against Southern Sportsman, Mason, Lyons, the Association, and McCurdy based on § 3-5-3(a), but that the plaintiffs failed to produce substantial evidence to survive summary judgment. On appeal, the plaintiffs' argument as to the circuit court's judgment concerning Southern Sportsman, Mason, Lyons, the Association, and McCurdy is that § 3-5-3(a) does not apply to those defendants. Based on the history and purpose of § 3-5-3(a), which created a cause of action to allow plaintiffs, such as the plaintiffs in this case, to recover when the common law had provided no such remedy, and assuming that the plaintiffs are correct in arguing that § 3-5-3(a) does not apply to Southern Sportsman, Mason, Lyons, the Association, or McCurdy, the plaintiffs' argument demonstrates only that they may not pursue any cause of action against those defendants. Accordingly, the plaintiffs' argument does not demonstrate that the circuit court's judgment as to Southern Sportsman, Mason, Lyons, the Association, and McCurdy is due to be reversed.

26

Next, the plaintiffs argue that they "had sufficiently set forth allegations that reasonably infer that [the defendants] had knowingly engaged in conduct such that they fully satisfied [§] 3-5-3(a)'s pleading requirement." The plaintiffs' brief at 38. In this portion of the plaintiffs' brief, the plaintiffs, citing Rule 12(b)(6), argue that they "set forth sufficient allegations that [the defendants'] conduct rose to the level of having 'knowingly plac[ed] horses upon the public highway.'" The plaintiffs' brief at 39. It is clear that, in this particular argument, the plaintiffs are arguing that they alleged facts sufficient to survive a motion to dismiss. However, as explained above, the circuit court entered a summary judgment in favor of the defendants -- which the plaintiffs had acknowledged earlier in their brief before this Court, discussed infra; the circuit court did not dismiss the plaintiffs' complaint under Rule 12(b)(6). Therefore, the plaintiffs' argument that they alleged sufficient facts to survive a motion to dismiss is entirely irrelevant to the judgment from which they appealed, and, thus, it does not demonstrate that the circuit court erred in entering a summary judgment in favor of the defendants.

However, even if we were to interpret the plaintiffs' argument as an argument that they had presented substantial evidence establishing a genuine issue of material fact, the plaintiffs' argument fairs no better. Despite having earlier argued that § 3-5-3(a) does not apply to Southern Sportsman, Mason, Lyons, the Association, or McCurdy, this section of the plaintiffs' brief presents an argument that is premised on that statute's applying to those defendants. Accordingly, we will include those defendants in this discussion.

In Ex parte Jackson, 378 So. 2d 1112, 1114 (Ala. 1979), this Court provided the following explanation of the terms "knowingly or wilfully," as they are used in § 3-5-3(a):

> "Our cases have consistently held that there is no cause of action under § 3-5-3 for a plaintiff-motorist who is injured because his car collided with livestock which had strayed onto a highway through the negligence, gross negligence or recklessness of its owner. In Randle v. Payne, 39 Ala. App. 652, 107 So. 2d 907 (1958), where a bull owner was being sued under Code 1940, Tit. 3, § 79, (the predecessor of § 3-5-3) by the driver of a truck that collided with the bull on Highway 11, the Court of Appeals held: 'There must be proof to the effect that the owner of the stock knowingly or wilfully placed the stock upon the public highway.' Randle, supra, 39 Ala. App. at 656, 107 So. 2d at 910. In McGough v. Wilson, 273 Ala. 179, 137 So. 2d 43 (1962), which case likewise involved the collision of a motor vehicle and a bull on a public highway, this court took note of the Randle decision and stated: '[I]ts majority opinion held, in effect, that an owner of livestock is

28

not liable in damages to a motorist involved in a collision with his livestock for negligence in permitting the stock to be on the highway in view of the statute.' McGough, supra, 273 Ala. at 182, 137 So. 2d at 45. In McGough this court added:

"'Knowingly and willfully doing an act is different from inadvertently doing the same act, OR PERMITTING IT TO BE DONE THROUGH INADVERTENCE OR NEGLIGENCE.'

"McGough, supra, 273 Ala. at 183, 137 So. 2d at 46 (emphasis[ in the form of capitalization] supplied).

"In reference to the two cases referred to above, the Court of Civil Appeals in Carter v. Alman, 46 Ala. App. 633, 247 So. 2d 676 (1971), a factually similar case, stated:

"'THESE CASES PLAINLY STATE THAT FOR RECOVERY, A MOTORIST MUST SUBMIT PROOF THAT THE OWNER OF THE FEASANT BEAST PLACED OR PUT IT UPON THE HIGHWAY WITH A "DESIGNED SET PURPOSE, INTENTION, OR DELIBERATION." EVIDENCE OF NEGLIGENCE OR GROSS CARELESSNESS IS NOT ENOUGH. There was no evidence introduced by appellant in the trial below with the slightest tendency to indicate acts of such nature by appellee.'

"Carter v. Alman, 46 Ala. App. at 635, 247 So. 2d at 677 (emphasis[ in the form of capitalization] supplied)."[6]

_____

[6]The plaintiffs include an argument that this Court's precedent has improperly conflated the terms "knowingly" and "wilfully," making it necessary for a plaintiff asserting a claim under § 3-5-3(a) to always prove intentional conduct. See the plaintiffs' brief at 33-38. The plaintiffs urge this Court to adopt the following definition of "knowingly":

The plaintiffs argue that they presented evidence indicating that Southern Sportsman, Mason, and Lyons, as the owners of the property, allowed the Association and McCurdy to conduct a trail ride on the property, which was not fenced. The plaintiffs further presented evidence indicating that Crowder and Phillipsen corralled their horses using a portable electric fence. It is undisputed that the horses escaped the fencing and wandered onto U.S. Highway 80. The plaintiffs allege that such facts are substantial evidence indicating that the defendants "knowingly … put or placed such stock upon such public highway, road or street where such damages were occasioned." § 3-5-3(a).

---

"Under the Restatement [(Second) of Torts], 'knowingly' exists when 'a defendant knows that the consequences of his act are certain or substantially certain to result from his intentional conduct, and he still proceeds, it is considered that he in fact intended to produce the consequences which in fact occurred.' Restatement [(Second) of Torts] § 8A(b) (1965). BLACK'S LAW DICTIONARY (11th ed. 2019) defines 'knowingly' as when 'the actor engaged in prohibited conduct with the knowledge that the social harm that the law was designed to prevent was practically certain to result' …."

The plaintiffs' brief at 35-36. The definition of "knowingly" urged by the plaintiffs is essentially the same as that set forth in the above-quoted portion of Ex parte Jackson. The plaintiffs' argument that this Court has rendered the term "knowingly," as it is used in § 3-5-3(a), obsolete is not well-taken.

30

The plaintiffs' argument makes no mention of the affidavit testimony of Crowder or Phillipsen. As set forth above, Crowder's affidavit indicates that, "[she] did not have any knowledge that [her] horse or horses had gotten out of the fencing" and that "[a]t no time … did [she] knowingly or willfully put or place [her] horse or horses upon or in U.S. Highway 80 …." Phillipsen's affidavit indicates that she "did not have any knowledge or reason to believe that [her] horse had gotten out of the electric fence" and that she "did not knowingly or willfully put or place [her] horse … upon or in the roadway of U.S. Highway 80 …."

The plaintiffs have not presented substantial evidence to create a genuine issue of material fact as to whether the defendants knowingly "put or placed [the horses involved in the accident] upon [U.S. Highway 80] where such damages were occasioned." § 3-5-3(a). Essentially, the plaintiffs have presented meager evidence indicating that Crowder and Phillipsen were, at most, negligent in the manner in which they corralled their horses. The above-quoted authority explaining what is required under § 3-5-3(a), however, makes clear that a plaintiff must present evidence of something more than negligent conduct. The plaintiffs have failed to do so. Crowder and Phillipsen explicitly stated that they did not

31

knowingly place their horses upon U.S. Highway 80 and that they had no knowledge that their horses had escaped the fencing. The plaintiffs have not demonstrated that the circuit court erred in entering a summary judgment in favor of the defendants.

Lastly, the plaintiffs urge this Court, as a matter of public policy, to reverse the circuit court's judgment. The plaintiffs argue that "[f]undamental tenets of risk allocation and public policy most unequivocally warrant that [the defendants] are legally responsible for remunerating [the plaintiffs] for the loss of [the deceased]." The plaintiffs' brief at 44. The plaintiffs did not raise this public-policy argument below and have not supported the argument with any binding precedent, and, thus, we will not consider it on appeal. Moore-Dennis v. Franklin, 201 So. 3d 1131, 1139 n.5 (Ala. 2016).

## Conclusion

Based on the foregoing, we affirm the circuit court's judgment.

AFFIRMED.

Parker, C.J., and Shaw, Wise, Sellers, Stewart, Mitchell, and Cook, JJ., concur.

Bryan and Cook, JJ., recuse themselves.